[Civ. No. 2713. Fifth Dist. Nov. 12, 1976.]

INEZ CARRERA, Plaintiff and Appellant, v.
ERNEST BERTAINI, as Animal Control Officer, etc., et al.,
Defendants and Respondents.

722

**COUNSEL**

Robert T. Olmos, Lynn A. Pineda, Neil J. Roberts and Claudia E. Smith for Plaintiff and Appellant.

Allen C. Wait, County Counsel, and James B. Orton, Deputy County Counsel, for Defendants and Respondents.

**OPINION**

**FRANSON, J.—**

INTRODUCTION

In this case we declare that the Kings County ordinance allowing the impoundment and sale of farm animals found to be "at large" upon any street or public place or upon any private property against the wishes of the owner of the property, and Penal Code section 597f, to the extent that it commands the impoundment of any farm animal "neglected" by its owner, are constitutionally invalid for failure to provide the owner or person entitled to possession of the animals a reasonable notice and hearing as required by the due process clause of the Fourteenth Amendment.[1] Because of the constitutional infirmity of the ordinance and statute, we hold that the impoundment of appellant's animals in the instant case was unlawful, and respondents must be ordered to return to appellant the animals or their reasonable value.

FACTS

The factual and procedural chronology is as follows: on November 9 and 10, 1974, the Kings County Animal Control Officer and his agents

---

[1] Section 4-68 of article V, chapter 4, of the Kings County Ordinance Code provides: "It is unlawful for any person owning, harboring, or controlling any livestock to permit such livestock to run at large upon the private property of another without the permission of the person owning or occupying said private property, or upon the streets or public places in Kings County. The animal control officer is authorized whenever he deems it necessary, . . . , to capture and transport livestock which is running at large in violation of this chapter. Each animal captured or transported pursuant hereto shall be impounded at the risk of the owner and the owner or keeper of such animal is liable for all fees set forth in section 4-75."

Penal Code section 597f provides in pertinent part: "Every owner, driver, or possessor of any animal, who shall permit the same to be in any building, enclosure, lane, street, square, or lot, of any city, city and county, or judicial district, without proper care and attention, shall, on conviction, be deemed guilty of a misdemeanor. And it shall be the duty of any peace officer, officer of the humane society, or officer of a pound or animal regulation department of a public agency, to take possession of the animal so abandoned or neglected and care for the same until it is redeemed by the owner or claimant, and the cost of caring for such animal shall be a lien on the same until the charges are paid."

entered appellant's property in Corcoran,. Kings County, California, and over appellant's protest took possession of her farm animals consisting of three bulls, six cows, six sows, two boars, one gelding horse, three goats, sixteen chickens, and three roosters. Shortly before the seizure some of the animals had been seen in a corn field adjacent to appellant's property and next to a public highway. The animals appeared to be "very hungry, poor, starved." Several of the cattle were hobbled and their legs were swollen and bleeding.

The fences surrounding appellant's property were down in various places with "loose spaces—big enough for an animal to go through."

Appellant was told by the officers that her animals were being impounded for running "at large" and for "cruelty and neglect."

Appellant also was told that she could appear at the Animal Control Office on November 12 to obtain information regarding redemption of her animals.

On November 12 appellant went to the Animal Control Office and was told that the impound fees and daily fees for food and care already totaled "over $300." However, appellant testified that she was told that it would cost her about $900 to get her animals back. At the time of the superior court hearing on the order to show cause, the fees required to be paid by appellant for the release of her animals had increased to $2,477.

On November 20 appellant was served a written notice of impoundment and sale pursuant to section 4-72 of the Kings County Ordinance Code. The notice stated that the animals described therein had been impounded and if not reclaimed by the owner on or before December 3, 1974, they would be sold as provided in section 4-74 of the code.

On December 3, 1974, appellant petitioned the superior court for a writ of mandamus to compel respondents to return her animals to her, or in the alternative to show cause why they had not done so. The superior court issued an order to show cause why a preliminary injunction should not issue restraining respondents from selling the impounded animals and it also issued a temporary order against the sale of the animals.

The order to show cause came on for hearing on December 19 and 23, 1974. Appellant at the hearing asserted the constitutional invalidity of

the impoundment and sale procedures under the ordinance and penal statute.

The trial court denied appellant's petition, apparently on the ground that since appellant had a right to institute a civil proceeding in the superior court to restrain the sale and to determine the merits of the impoundment of her animals, her procedural due process rights had been satisfied.

Judgment was entered against appellant on January 24, 1975. She filed a timely notice of appeal.

## Discussion

■ Where a person's property is taken by the government, the due process clause of the Fourteenth Amendment requires some form of notice and a hearing. (*Beaudreau* v. *Superior Court* (1975) 14 Cal.3d 448, 458 [121 Cal.Rptr. 585, 535 P.2d 713]; *Mathews* v. *Eldridge* (1976) 424 U.S. 319 [47 L.Ed.2d 18, 96 S.Ct. 893, 902].) Absent extraordinary circumstances justifying resort to summary procedures, the hearing must take place *before* the property is taken. As explained in *Fuentes* v. *Shevin* (1972) 407 U.S. 67, 81-82 [32 L.Ed.2d 556, 570-571, 92 S.Ct. 1983]: "If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented. At a later hearing, an individual's possessions can be returned to him if they were unfairly or mistakenly taken in the first place. Damages may even be awarded to him for the wrongful deprivation. But no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred. 'This court has not . . . embraced the general proposition that a wrong may be done if it can be undone.' [Citation.]"

Moreover, the fact that the deprivation may be temporary does not alter the need for due process. As stated in *Fuentes*: "But it is now well settled that a temporary non-final deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment. *Sniadach* v. *Family Finance Corp.*, 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820]; *Bell* v. *Burson*, 402 U.S. 535 [29 L.Ed.2d 90, 91 S.Ct. 1586]. Both *Sniadach* and *Bell* involved takings of property pending a final judgment in an underlying dispute. In both cases, the challenged statutes included recovery provisions, allowing the defendants to post security to quickly regain the property taken from them. Yet the court firmly held that these

were deprivations of property that had to be preceded by a fair hearing." (407 U.S. at pp. 84-85 [32 L.Ed.2d at pp. 572-573, 92 S.Ct. at p. 1983].)

■ Thus, even though the impoundment fees properly can be classified as payments to reimburse the county for the cost of seizing, feeding, and housing the animals, the holding and consequent deprivation to appellant of her right to possession of the animals constituted a taking of her property. Regardless of how soon appellant might have been able to pay the costs of impoundment, the seizure of the animals activated the due process requirements of notice and a hearing.

Nor does the fact that appellant had the right to institute a court action to review the propriety of the seizure of her animals alleviate the need for a prior notice and hearing. In *Sniadach* v. *Family Finance Corp., supra,* 395 U.S. at 338-339 [23 L.Ed.2d at pp. 351-352, 89 S.Ct. 1820], the Supreme Court explained that a taking of property without a notice and hearing violates due process even if the taking may only be temporary because the deprived party *might* have it returned in a subsequent adjudication of the factual dispute in a civil court. (See also *T. M. Cobb Co.* v. *County of Los Angeles* (1976) 16 Cal.3d 606, 617, fn. 6 [128 Cal.Rptr. 655, 547 P.2d 431].) The fact that the temporary deprivation may later be remedied at a civil trial does not relieve the government of the duty of providing a reasonable notice and hearing before the seizure. (See *Beaudreau* v. *Superior Court, supra,* 14 Cal.3d at p. 455; *Fuentes* v. *Shevin, supra; Sniadach* v. *Family Finance Corp., supra.*)

■ Similarly, the lack of a meritorious defense by the owner does not obviate the necessity of a notice and hearing. "It is enough to invoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake, whatever the ultimate outcome of a hearing . . ." (*Fuentes* v. *Shevin, supra,* 407 U.S. at p. 87 [32 L.Ed.2d at p. 574, 92 S.Ct. 1983].) Therefore, even though appellant was probably guilty of permitting some of her livestock to run at large in violation of county ordinance code section 4-68, and of failing to care for her animals in violation of Penal Code section 597f, she nonetheless was entitled to a hearing prior to the seizure of her animals.

■ Necessarily, the formality and procedural requirements for a hearing will vary according to the competing interests of the government and the citizen. (*Boddie* v. *Connecticut* (1971) 401 U.S. 371, 378 [28 L.Ed.2d 113, 91 S.Ct. 780]; *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 209 [124 Cal.Rptr. 14, 539 P.2d 774].) "Procedural due process does

not require a trial before a court. A proceeding before an administrative officer or board is adequate if the basic requirements of *notice* and *opportunity for hearing* are met." (See 5 Witkin, Summary of Cal. Law, Constitutional Law, § 299, p. 3588.) Of course, the hearing must be before an impartial officer or body. (See *Wong Yang Sung* v. *McGrath* (1950) 339 U.S. 33 [94 L.Ed. 616, 70 S.Ct. 445]; Witkin, *supra,* § 306, p. 3598.)[2]

■ There are, of course, situations where the summary seizure of property has been held to be essential to the legitimate and overriding interests of government. In *Fuentes* v. *Shevin, supra,* (407 U.S. at p. 90 [32 L.Ed.2d at p. 576, 92 S.Ct. at 1983]), the following is stated: ". . . in a few limited situations . . . this court [has] allowed outright seizure without opportunity for a prior hearing. First in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been special need for very prompt action. Third, the state has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance. Thus, the court has allowed summary seizure of property to collect the internal revenue of the United States [*Phillips* v. *Commissioner of Internal Revenue* (1931) 283 U.S. 589 (75 L.Ed. 1289, 51 S.Ct. 608)], to meet the needs of a national war effort [*Central Union Trust Co.* v. *Garvan* (1921) 254 U.S. 554 (65 L.Ed. 403, 41 S.Ct. 214)], to protect against the economic disaster of a bank failure [*Fahey* v. *Mallonee* (1947) 332 U.S. 245 (91 L.Ed. 2030, 67 S.Ct. 1552)], and to protect the public from misbranded drugs and contaminated food [*Ewing* v. *Mytinger & Casselberry,* (1950) 339 U.S. 594 (94 L.Ed. 1088, 70 S.Ct. 870); *North American Cold Storage Co.* v. *Chicago* (1908) 211 U.S. 306 (53 L.Ed. 195, 29 S.Ct. 101)]."

Under *Fuentes, supra,* it is clear that at times the summary seizure of farm animals must be permitted to protect the personal safety and property rights of our citizens. For example, where an animal has strayed onto a public highway, it must be removed from the highway to avoid

[2]In the present case, appellant suggests that before her animals were seized she should have been afforded an informal hearing before an officer of the county health department where she could have called her own witnesses and cross-examined those of the county to determine the justification for the seizure. While the designation of the board or officer to conduct an administrative hearing is a matter for the appropriate legislative body to determine, subject only to review by the courts as to the constitutional fairness of the procedures, it would seem that appellant's suggestion has merit.

injury to motorists and others using the highway. Also, if an animal with dangerous propensities has escaped from its enclosure, it must be returned to its enclosure to avoid injury to others. So too, an injured, sick, or starving animal must be cared for in a humane way, if possible. In these situations, if after a reasonable investigation the officer is unable to locate the owner or person entitled to the possession of the animal for the purpose of giving him the opportunity of recapturing the animal or of caring for the animal as the situation may demand, then the officer must have the power summarily to take possession of the animal. Here, the governmental interest in protecting the person and property of others must be deemed to override the property right of the owner.

However, in all of the instances where the government's summary seizure of property has been upheld, the statute has provided for a post-seizure hearing, or has obligated the government to initiate a civil action to determine if the seizure was justified. (See *Central Union Trust Co.* v. *Garvan, supra,* 254 U.S. at pp. 567, 568 [65 L.Ed. at pp. 408, 409, 41 S.Ct. 214]; *Phillips* v. *Commissioner of Internal Revenue, supra,* 283 U.S. at pp. 597, 598 [75 L.Ed. at pp. 1297, 1298, 51 S.Ct. at p. 608]; *Fahey* v. *Mallonee, supra,* 332 U.S. at p. 254 [91 L.Ed. at p. 2039, 67 S.Ct. 1552]; *Ewing* v. *Mytinger & Casselberry, Inc., supra,* 339 U.S. at pp. 598, 599 [94 L.Ed. at pp. 1092, 1093, 70 S.Ct. at p. 870]; *North American Cold Storage Co.* v. *Chicago, supra,* 211 U.S. 306 [53 L.Ed. 195, 29 S.Ct. 101]; see also *Mitchell* v. *W. T. Grant Co.* (1974) 416 U.S. 600, 618 [40 L.Ed.2d 406, 419-420, 94 S.Ct. 1895].)

The requirement of a post-seizure hearing is particularly applicable to the impoundment of farm animals which normally contribute to the support and livelihood of their owner. The economic hardship to the owner from such an impoundment is vividly demonstrated by the present case. The impoundment immediately resulted in appellant incurring several hundred dollars in fees and costs which had to be paid before she could get possession of her animals. By the time she was able to institute a lawsuit and obtain a hearing in court, the impound fees had increased to $2,477. ▮ As a matter of basic fairness, *to avoid the incurrence of unnecessary expenses* appellant was entitled to a hearing before her animals were seized or, if the circumstances justified a seizure without notice and a hearing, she was entitled to a prompt hearing after the animals were seized. Manifestly, the hearing in the superior court six weeks after the seizure cannot be said to satisfy appellant's due process rights.

Respondents argue that the ordinance and statute should be interpreted as requiring a post-seizure hearing *when demanded by the owner,* citing *Simpson* v. *City of Los Angeles* (1953) 40 Cal.2d 271 [253 P.2d 464]. In that case, the court interpreted an ordinance governing the impoundment and disposition of stray dogs as providing for a hearing when requested by the owner, even though there was no express provision for such a hearing. (40 Cal.2d at p. 282.) *Simpson,* however, is clearly distinguishable because the ordinance included a provision for the return of animals unlawfully seized. (40 Cal.2d at pp. 281-282.) Since a determination had to be made whether a seizure was lawful or not, it was implied from the ordinance that a hearing must be held. In the present case, neither the county ordinance nor the penal statute contain a provision regarding the return of animals unlawfully seized; hence, there is no room to imply the necessity of a hearing, and the ordinance and statute must fall.

The judgment denying the petition for writ of mandate is reversed; the action is remanded to the superior court with directions to conduct a hearing to determine if appellant's animals can be returned to her and if not, to ascertain the reasonable value thereof and to enter judgment in favor of appellant and against respondents for said amount.

Brown (G. A.), concurred.

**THOMPSON, J.**\*—I concur. I wish to note that nothing in this opinion herein derrogates that provision of Penal Code, section 597f, which provides: "Notwithstanding any other provisions of this section, any officer of a pound or animal regulation department or humane society, or any officer of a police or sheriff's department may, with the approval of his immediate superior, humanely destroy any abandoned animal in the field in any case where the animal is too severely injured to move or where a veterinarian is not available and it would be more humane to dispose of such animal."

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.