[No. D001955. Fourth Dist., Div. One. Feb. 14, 1986.]

JEAN JETT, Plaintiff and Appellant, v.
THE MUNICIPAL COURT FOR THE SAN DIEGO JUDICIAL
DISTRICT OF SAN DIEGO COUNTY, Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

COUNSEL

Boyce & Frausto and Robert E. Boyce for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

John W. Witt, City Attorney, and Steven R. Gustavson, Deputy City Attorney, for Real Party in Interest and Respondent.

OPINION

**BUTLER, J.**—Jean Jett owned Rocky, aka J.P., a 50-year-old aldabra tortoise,[1] and his companion for 18 years. The San Diego Humane Society (Society), in response to complaints of cruelty, found Rocky in a petting zoo operated by Jett at a shopping center. Rocky was suffering from infected eyes, a crack on the edge of its shell, diarrhea, dehydration, labored breathing and toenails worn down to the quick. The Society removed Rocky from Jett's custody and treated the tortoise for these various ailments, all indicative of lack of care and attention.

Jett was charged with and convicted by a jury of misdemeanor violation of Penal Code[2] section 597, subdivision (b) (count one, subjecting animal

---

[1] A giant tortoise found on the Aldabra Islands in the Republic of Seychelles, an archipelago in the Indian Ocean. These tortoises have been protected since 1965 in a natural reserve. (Encyclopaedia Brittanica (15th ed. 1981) Micropaedia, vol. 1, p. 212.)

[2] All statutory references are to the Penal Code unless otherwise specified.

As will later appear, subdivision (b) of section 597, cruelty to animals, is to be distinguished from section 597b, fighting animals or birds.

to needless suffering) and section 597f (count two, permitting an animal to be on a street or lot without proper care or attention). He was acquitted on count three which charged a violation of San Diego County Code section 62.673, prohibiting the treatment of an animal in a cruel or inhumane manner or permitting such animal to suffer unnecessary pain.

At sentencing on March 2, 1984, Jett refused probation and the court sentenced him "to pay a fine of $500.00 including penalty assessments by March 30, 1984 and to relinquish ownership of tortoise to Mesa College." The court at the sentencing hearing denied Jett's motion for return to him of Rocky. March 7, 1984, Jett appealed his conviction to the appellate department of the superior court.[3]

Meanwhile, on March 14, 1984, the court signed an order remanding Rocky to Mesa College Animal Health Technicians Program subject to the statutory lien of the Society for reimbursement of its costs (§ 597f). Rocky continues to reside at Mesa College.

March 19, 1984, Jett filed in the superior court his petition for a writ of mandate to compel the municipal court to vacate its order denying his motion for Rocky's return and to enter an order granting his motion. The petition was denied on June 26, 1985, and he appeals.

I

■ Jett's appeal from his conviction and the judgment of the court sentencing him to a fine, ordering relinquishment of ownership and placing the tortoise in the custody of Mesa College does not bar him from maintaining an action for the return to him of the tortoise. His nonstatutory motion for Rocky's return in the municipal court was appropriate (*Buker* v. *Superior Court* (1972) 25 Cal.App.3d 1085, 1091 [102 Cal.Rptr. 494]) and constituted a procedure separate from his criminal trial and is not reviewable on his appeal from the judgment of conviction. (*People* v. *Gershenhorn* (1964) 225 Cal.App.2d 122, 125 [37 Cal.Rptr. 176].) As the order denying return of the tortoise is not appealable, Jett's remedy lies in mandamus or in the institution of a civil action to recover his property. (*People* v. *Gershenhorn, supra,* at p. 126.) Jett's appeal to the appellate department of the superior court from his criminal conviction and reversal of that conviction does not bar our consideration of his appeal from the denial of the writ of mandate seeking Rocky's return to him. We turn to the merits.

---

[3]We take judicial notice of Jett's superior court file (Evid. Code, § 452). On December 20, 1985, the appellate department heard Jett's appeal of his conviction and reversed (CR 72391). We consider the criminal appeal and the reversal not relevant to these proceedings.

## II

Jett's pretrial section 1538.5 motion to suppress evidence of maltreatment of the tortoise and for return of the tortoise to him was denied. He does not contest on appeal the initial seizure and impoundment of Rocky by the Society. Accordingly, we do not discuss the contention of the People the warrantless seizure of the tortoise and its retention by the Society was proper under the exigent circumstances described in *Cleaver* v. *Superior Court* (1979) 24 Cal.3d 297, 302 [155 Cal.Rptr. 559, 594 P.2d 984], and we are not concerned with the failure of the court to hold the postseizure hearing to comply with due process requirements for animal impoundments mandated by *Carrera* v. *Bertaini* (1976) 63 Cal.App.3d 721, 728-729 [134 Cal.Rptr. 14]. In any event, the initial seizure and subsequent impoundment of Rocky for treatment of his various ailments was proper in the circumstances. (*Carrera* v. *Bertaini, supra,* at p. 728; § 597f.)

## III

■ We conclude the court had no power to divest Jett of his ownership of Rocky and to require him to convey title to the tortoise to Mesa College. The state's concern for the protection of animals from cruelty is expressed in sections 597 through 597z. The disposition of animals cruelly treated falls into two categories. Cruelly treated animals, seized and impounded, are subject to a lien for reimbursement of costs incurred during impoundment. Fighting animals taken from their owners are subject to forfeiture upon court order. We briefly review these provisions.

### A.

A person who carries a domestic animal in a vehicle in a cruel manner or permits it to be tortured commits a misdemeanor and upon such person being taken into custody, the officer must take charge of the vehicle and its contents together with the horse or team attached to it. Any expense incurred in their keeping is a lien recoverable from the owner (§ 597a). A person who fails to supply an impounded domestic animal with a sufficient quantity of good and wholesome food and water is guilty of a misdemeanor and if such failure continues for more than twelve consecutive hours, any person may enter the pound and supply the animal and the owner is liable for the costs (§ 597e).

Section 597f, with which Jett was charged in count two, provides any owner who permits an animal to be in a place without proper care or attention is guilty of a misdemeanor, and goes on to permit a humane society to take possession of the animal "so abandoned or neglected" and care for it

"until . . . redeemed by the owner . . . ." The cost of the care is a lien on the animal. While an abandonment in some circumstances might permit a divestment of title, such divestment could occur only following the procedures for establishing the lien and its amount. Here, Jett petitioned for return of Rocky and the court in denying the motion expressly reserved the Society's lien, thus negating any abandonment by Jett. (*People* v. *Untiedt* (1974) 42 Cal.App.3d 550, 555 [116 Cal.Rptr. 899].)

The liens provided for in these sections 597a and 597f are satisfied in the manner and under the procedures set out in Code of Civil Procedure section 1208.5. We turn to forfeiture of fighting animals.

## B.

Section 599aa provides any officer making an arrest under section 597.5 (fighting dogs) *shall,* and as to an arrest under section 597b (fighting animals except dogs) or 599a[4] *may,* take possession of all birds or animals and paraphernalia and other property used or employed in the violation of any Penal Code provision relating to the fighting of birds or animals. The officer must then file a complaint and deliver the creatures to a magistrate who is required to place them in custody of a proper person. Upon conviction of the person charged, "all property so seized shall be adjudged by the court to be forfeited and shall thereupon be destroyed or otherwise disposed of as the court may order." (§ 599aa.)

Section 599aa provides for the forfeiture of birds or animals seized in connection with an arrest for violation of and the conviction under any Penal Code section prohibiting specific activities involving fighting birds or animals. (*People* v. *Treadway* (1975) 55 Cal.App.3d Supp. 15 [127 Cal.Rptr. 306].)

Jett was not arrested under any of these bird- or animal-fighting Penal Code sections and he was not charged with nor convicted of a violation of any Penal Code provision relating to the fighting of birds or animals.

## IV

■ The People, nevertheless, seriously contend the forfeiture of fighting animals provided for in section 599aa authorized the court to award Rocky

---

[4]Section 599a provides a magistrate must issue a warrant to search a place and to arrest any person who is charged in a complaint under oath that any provision of law "relating to, or in any way affecting, dumb animals or birds" has been violated. While any place may be searched and any person arrested in connection with violation of any law relating to dumb animals or birds, only fighting birds or animals and their paraphernalia seized pursuant to a section 599a arrest are subjected to forfeiture under section 599aa.

to Mesa College. The argument fails. Rocky is not a fighting animal. He is a reptile of the order Testudinata and of the genus Testudo, characterized as long-lived, slow-moving and herbivorous. (Webster's Third New Internat. Dict. (1981).)

It is true for some purposes a tortoise is deemed an animal. Thus, a motion picture exhibiting the intentional killing of, or cruelty to, an animal, may be enjoined as a nuisance. (Civ. Code, § 3505.) For these purposes, the word "animal" means any amphibian, bird, mammal or reptile, but not a fish[5] or insect. (Civ. Code, § 3504.) "Animal" in its broadest sense includes any organism of the animal kingdom, one of the three divisions into which natural objects are divided, the others being mineral and plant. We conclude the word "animal" as used in these Penal Code sections means a mammal as distinguished from a bird, reptile or other nonmammal. (See Webster's Third New Internat. Dict., *op. cit. supra.*)

This slow-moving, grass-grazing giant tortoise is not a fighting animal. To say Rocky belongs in the ring is worthy of Mr. Bumble's observation in Charles Dickens' Oliver Twist: "If the law supposes that, . . . the law is a ass, a idiot." (Bartlett's Familiar Quotations, Rev. (15th ed. 1980) p. 547.)

V

■ Finally, the People argue Rocky should be equated with a child and under the persuasion of *In re Angelia P.* (1981) 28 Cal.3d 908, 916 [171 Cal.Rptr. 637, 623 P.2d 198], Jett's rights to Rocky should be terminated as parental rights must yield when necessary to protect the child's best interest. While a child preparing for homework or cleaning a bedroom may exhibit turtle-like qualities or creep toward school in turtle pace, we decline to equate title to a tortoise to the relationship between a parent and a child. Jett owns Rocky. Parents have custody of children. The statutory scheme in sections 597 through 597z reflects the state's concern for the protection of the health and well-being of animals. Absent statutory authority, a court

---

[5]Shakespeare, however, considered a tortoise a kind of fish:
"I do remember an apothecary,—
"And hereabouts he dwells,—which late I noted
"In tatter'd weeds, with overwhelming brows,
"Culling of simples; meagre were his looks,
"Sharp misery had worn him to the bones:
"And in his needy shop a tortoise hung,
"An alligator stuff'd, and other skins
"Of ill-shaped fishes . . . ."
(Shakespeare, Romeo and Juliet, act IV, scene v.)

may not divest an owner of a property interest in a nonfighting animal or bird to effectuate that concern. If ownership of animals is to be divested by reason of cruel treatment, the remedy lies with the Legislature, not with us.

We conclude Jett is Rocky's owner and the court had no authority to divest him of ownership and to award Rocky to Mesa College. The order denying the writ is reversed and Rocky is remanded to the custody of the Society subject to Jett's right to redeem him upon payment of the costs necessary to discharge the lien, such costs, however, to be limited to those incurred by the Society from the date of Rocky's seizure to the date the municipal court denied Jett's motion for Rocky's return.

Lewis, J., concurred.

**WORK, Acting P. J.**—I concur. However, the issue is arguably moot; we have lately become aware that Jett's underlying conviction has been reversed. Hopefully our decision will forestall the same problem should we be faced with Rocky II.