[No. B015913. Second Dist., Div. Six. July 15, 1986.]

SUSAN PHILLIPS et al., Plaintiffs and Appellants, v.
SAN LUIS OBISPO COUNTY DEPARTMENT OF ANIMAL
REGULATION et al., Defendants and Respondents.

**COUNSEL**

Shaunna Sullivan and George & Collins for Plaintiffs and Appellants.

Joyce S. A. Tischler as Amicus Curiae on behalf of Plaintiffs and Appellants.

James B. Lindholm, Jr., County Counsel, Jac A. Crawford, Assistant County Counsel, and John Paul Daly, Deputy County Counsel, for Defendants and Respondents.

**OPINION**

**GILBERT, J.**—This is a death penalty case. We reverse. Missy, a female black Labrador, shall live, and "go out in the midday sun."

Petitioners Susan, Russell and Mary Phillips appeal the judgment of the trial court denying their petition for a writ of mandamus. (Code Civ. Proc., § 1085.) We reverse the judgment and hold that an ordinance permitting the county to destroy a dog without a noticed hearing to the dog owner who requests one is constitutionally infirm.

We resist the temptation that grabbed hold of our colleagues who have written dog opinions, and will not try to dig up appropriate sobriquets. You will not read about "unmuzzled liberty." Nor will you consider an argument "dogmatically asserted," or cringe with "we con-cur." (*In re Ackerman* (1907) 6 Cal.App. 5 [91 P. 429].) We will not subject you to phrases such as "barking up the wrong tree." (*Romero* v. *County of Santa Clara* (1970) 3 Cal.App.3d 700, 704 [83 Cal.Rptr. 758].) We disavow doggerel.

### FACTS

The Phillips own "Missy." In 1981 and twice again in 1982, the San Luis Obispo County Department of Animal Regulation (the department)

received reports that Missy bit a child. These incidents occurred while Missy lived with Mary Phillips in Morro Bay. After the third report, the department directed Mrs. Phillips to confine Missy to an enclosed kennel run.

In May 1985 Mrs. Phillips entered the hospital for surgery and surrendered Missy to the care of her son and daughter-in-law in Atascadero. On May 20 Missy bit a child entering the Phillips' residence to play. The child's mother, a registered nurse, observed a single puncture wound on the child's buttocks. The department seized Missy three days later and on the following day ordered Missy destroyed.

The Phillips demanded a hearing concerning the destruction order. The director of the department believed that the Atascadero City and San Luis Obispo County ordinances[1] did not permit a dog owner to appeal a destruction order. As an epilogue to this tale of two cities, Steve Carnes, a county environmental health officer, conducted a "courtesy" hearing at the request of a county supervisor to determine Missy's fate.

The department sought to prove the first three biting incidents by testimony that the records reflected reports of three bites. The victim and her mother testified as to the fourth bite. The Phillips acknowledged paying medical bills for the first and third bites. The hearing officer concluded that Missy had bitten four children and that she should be destroyed.

The Phillips filed a petition for a writ of mandamus requesting that the court vacate the destruction order and declare the ordinances unconstitutional because they fail to provide notice and a hearing before permitting a destruction order. The trial judge agreed that the ordinances did not expressly provide for notice and a hearing. He found, however, that the requirement of a hearing could be implied from the language of the ordinances and that

---

[1]The San Luis Obispo Department of Animal Regulation provided animal control services to the City of Atascadero. Atascadero City Code section 4-1.212 and San Luis Obispo County Code section 9.08.130 were identical and provided in part: "If any dog within the City is known to have bitten any person or persons on at least two separate occasions, the Chief Animal Control Officer shall notify the owner or person having control of such dog to so keep or surrender the dog in such manner as the Chief Animal Control Officer shall direct. If it is determined by the Chief Animal Control Officer that the dog cannot be properly controlled in order to ensure public safety, then the Chief Animal Control Officer shall destroy the dog in a humane manner. [¶] If any dog within the City is determined by the Chief Animal Control Officer to be vicious and dangerous to the safety of any person or persons, the Chief Animal Control Officer shall notify the owner or person having control of such dog to keep or surrender the dog in such manner as the Chief Animal Control Officer shall direct. If it is determined by the Chief Animal Control Officer that the dog cannot be properly controlled in order to ensure public safety, the Chief Animal Control Officer shall destroy the dog in a humane manner."

the hearing afforded the Phillips satisfied due process and produced sufficient evidence to support Missy's condemnation.

On appeal the Phillips contend (1) the ordinances are constitutionally infirm because they fail to provide for notice and a hearing prior to destruction of a dog; (2) the ordinances do not impliedly permit a noticed hearing; (3) the gratuitous hearing afforded them does not satisfy due process of law; (4) in the absence of an ordinance requiring a noticed hearing, Civil Code section 3342.5[2] governs the destruction of a biting dog; and (5) they are entitled to attorneys' fees. (Code Civ. Proc., § 1021.5.)

DISCUSSION

I.

The Phillips contend the dog destruction ordinances deny them due process of law because the ordinances do not provide for a hearing prior to the seizure or the destruction of a dog. We agree that due process requires that a dog owner have an opportunity to be heard prior to the destruction of his dog unless there is need for prompt government action. (*Fuentes* v. *Shevin* (1972) 407 U.S. 67, 81-82 [32 L.Ed.2d 556, 570-571, 92 S.Ct. 1983]; *Carrera* v. *Bertaini* (1976) 63 Cal.App.3d 721, 728-729 [134 Cal.Rptr. 14].)

Procedural due process imposes constraints on governmental decisions depriving individuals of liberty or property interests. (*Mathews* v. *Eldridge* (1976) 424 U.S. 319, 332 [47 L.Ed.2d 18, 31-32, 96 S.Ct. 893]; *Isbell* v. *County of Sonoma* (1978) 21 Cal.3d 61, 68 [145 Cal.Rptr. 368, 577 P.2d 188].) Principles of due process apply to all takings of non de minimus property, including such disparate objects as farm animals (*Carrera, supra,* 63 Cal.App.3d 721, 724), a motorcycle engine (*Hughes* v. *Neth* (1978) 80 Cal.App.3d 952, 959 [146 Cal.Rptr. 37]), a tortoise (*Jett* v. *Municipal Court* (1986) 177 Cal.App.3d 664, 668 [223 Cal.Rptr. 111]) or a newsrack (*Kash*

---

[2]Civil Code section 3342.5 provides in part: ". . . (b) Whenever a dog has bitten a human being on at least two separate occasions, any person, the district attorney, or city attorney may bring an action in the municipal court against the owner of the animal to determine whether conditions of the treatment or confinement of the dog or other circumstances existing at the time of the bites have been changed so as to remove the danger to other persons presented by such animal. This action shall be brought in the county where a bite occurred. The court, after hearing, may make any order it deems appropriate to prevent the recurrence of such an incident, including, but not limited to, the removal of the animal from the area or its destruction if necessary.

". . . . . . . . . . . . . . . . . . . . . . . .

"(e) Nothing in this section shall be construed to prevent legislation in the field of dog control by any city, county, or city and county."

*Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 308 [138 Cal.Rptr. 53, 562 P.2d 1302]). We think that dogs, being personal property and having economic value, are also included within its reach. (Civ. Code, § 655; Pen. Code, § 491; *Johnson* v. *McConnell* (1889) 80 Cal. 545, 548-549 [22 P. 219]; *People* v. *Sadowski* (1984) 155 Cal.App.3d 332, 335 [202 Cal.Rptr. 201]; *Roos* v. *Loeser* (1919) 41 Cal.App. 782, 785 [183 P. 204].) Aside from their economic value, however, ". . . it is equally true that there are no other domestic animals to which the owner or his family can become more strongly attached, or the loss of which will be more keenly felt" *(Johnson, supra,* at p. 549), unless the animal is a cat, to which many people have equally strong attachments, but will reluctantly agree that the word "owner" is inappropriate. (See also Eliot, Old Possum's Book of Practical Cats (1939).)

*Carrera* v. *Bertaini, supra,* 63 Cal.App.3d 721 concerned an ordinance and Penal Code section permitting the impoundment and sale of neglected farm animals. The court declared the ordinance invalid because it failed to provide reasonable notice and a hearing either before or after seizure: "As a matter of basic fairness, to avoid the incurrence of unnecessary expenses appellant was entitled to a hearing before her animals were seized or, if the circumstances justified a seizure without notice and a hearing, she was entitled to a prompt hearing after the animals were seized." *(Carrera,* 63 Cal.App.3d 721, 729. See also *Anderson* v. *George* (1977) 160 W.Va. 76 [233 S.E.2d 407, 409] invalidating seizure, without notice or hearing, of abandoned or neglected animals.)

*Hughes* v. *Neth, supra,* 80 Cal.App.3d 952 involved the forfeiture and disposal of a motorcycle engine bearing a defaced serial number without notice and hearing to the owner. Notwithstanding the court's judicial notice ". . . that our society is overburdened with thieves and burglars . . .," the court concluded that law enforcement officials failed to prove the extraordinary situation justifying a summary forfeiture without notice and hearing. *(Hughes,* 80 Cal.App.3d 952, 959-960; *Fuentes* v. *Shevin, supra,* 407 U.S. 67 [32 L.Ed.2d 556].) Thus plaintiff Hughes was entitled to return of the motorcycle engine or a noticed hearing where she might oppose its forfeiture and destruction. *(Id.,* at p. 960.)

The county unleashes an argument that Atascadero City ordinance 4-1.207, providing a hearing regarding the lawfulness of impound, offered the Phillips a hearing on Missy's condemnation. The relevant portion of that ordinance provides in part: "No fees whatsoever shall be charged or collected for or on account of any dog which has been unlawfully taken up or impounded. If the owner or person entitled to the custody of the dog

believes that the dog has been unlawfully taken up or impounded, that owner or person may, within the seventy-two (72) hour redemption period, request that an impartial hearing be conducted to determine the sole issue of whether the dog was lawfully seized and impounded . . . ." This argument strays from the point. Section 4-1.207 is not pertinent.

We agree with the trial judge that ordinance 4-1.207 concerns stray or trespassing dogs and not the legality of an order of destruction. Subdivision (b) concerns the collection of fees from the owner of an unlawfully impounded dog. It does not concern the destruction of a vicious dog because he cannot be controlled in order to ensure public safety. Moreover, the placement of this ordinance within the code suggests that it applies to stray dogs (Ord. No. 4-1.201) and dogs at large (Ord. No. 4-1.204) and not vicious or biting dogs. Therefore, we must bury this argument.

We also disagree with the county that *Simpson* v. *City of Los Angeles* (1953) 40 Cal.2d 271 [253 P.2d 464] legitimizes the county's actions regarding Missy. *Simpson* involved the constitutionality of a vivisection ordinance permitting the department of animal regulation to donate *unclaimed* animals to medical research laboratories. (*Simpson,* at pp. 275-276.) *Simpson* approved the ordinance and held that ". . . when dogs have been lawfully impounded under the police power and *have become subject to disposition* under the terms of the ordinance by any of the means noted above, private property rights in such dogs, must, in the interest of public welfare, be treated as having been terminated." (*Id.,* at pp. 279-280; italics added.) We think that our Supreme Court limited its holding to dogs "subject to disposition" under the factual circumstances of that case—stray dogs whose owners have not claimed them for five days. In contrast, the Phillips have claimed ownership of Missy, vigorously contested the seizure and destruction order, and have demanded a hearing since officials seized Missy.

■■■ Decisions construing the federal and state due process guarantees generally require that an individual receive notice and some form of hearing before he is deprived of his property or liberty. (*Fuentes* v. *Shevin, supra,* 407 U.S. 67, 81-82 [32 L.Ed.2d 556, 570-571]; *Kash Enterprises, Inc.* v. *City of Los Angeles, supra,* 19 Cal.3d 294, 308.) Nevertheless, important governmental interests may justify postponement of notice and hearing until after the initial taking has occurred. (*Fuentes, supra,* at p. 90 [32 L.Ed.2d at p. 575]; *Kash, supra,* at p. 308; *Carrera, supra,* at p. 728.) Whether special circumstances warrant summary seizure depend upon the nature of the governmental interest, the need for "very prompt action," and the duty of the seizing official under the standards of a narrowly drawn statute. (*Fuentes* at p. 90; *Carrera* at p. 728.)

It is obvious that summary seizure of dogs must be permitted when of immediate danger to the public, as for example when the dog is vicious or rabid. In that situation, the governmental interest in protecting the personal and property rights of others is paramount to the property right of the dog owner. However, the constitutionality of the ordinance or statute justifying seizure rests upon its provision for a prompt postseizure hearing. (*Kash, supra,* at p. 308; *Carrera, supra,* at p. 729.) Ordinance 4-1.212 does not provide for a hearing either before or after the taking of a biting or vicious dog.

## II.

■■■■ The Phillips contend that the requirement of a hearing cannot be implied from the ordinance permitting the destruction of uncontrollable biting or vicious dogs. (Fn. 1, *ante.*) The trial judge found that the ordinance required the department to make two determinations: first, that a dog has either bitten two persons or is vicious and dangerous; and second, that the dog "cannot be properly controlled." The judge concluded that the second finding implied notice and hearing. (*Simpson* v. *City of Los Angeles, supra,* 40 Cal.2d at pp. 281-282.) We disagree with this analysis.

Our Supreme Court in *Simpson* concluded that the necessity of a hearing could be implied from that portion of the ordinance providing: "'No fees whatsoever shall be charged or collected for or on account of any animal which has been unlawfully taken up or impounded, and any such animal shall be immediately delivered upon demand therefor to the owner or person entitled to the custody thereof.'" (Pp. 281-282.) The requirement of a hearing could be implied from the phrase requiring return of unlawfully seized animals. (*Carrera* v. *Bertaini, supra,* 63 Cal.App.3d 721, 730.) Although it is proper to read a legislative command for a hearing into a statute, there must be some language from which that requirement can be inferred. (*Merco Constr. Engineers, Inc.* v. *Los Angeles Unified Sch. Dist.* (1969) 274 Cal.App.2d 154, 168 [79 Cal.Rptr. 23].) Here the ordinance does not provide for the return of a dog and there is no room to imply the necessity of a hearing.

Moreover, a notice and hearing requirement is prominent in other Atascadero City ordinances concerning the regulation of dogs. The suspension of a kennel or pet shop license invokes a hearing upon demand (Ord. No. 4-1.116) as does the charging of an impound fee (Ord. No. 4-1.207). Where the Legislature has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded. (*Gonzales & Co.* v. *Department of Alcoholic Bev. Control* (1984) 151 Cal.App.3d 172, 178

[198 Cal.Rptr. 479]; *Ford Motor Co.* v. *County of Tulare* (1983) 145 Cal.App.3d 688, 691 [193 Cal.Rptr. 511].)

### III.

The Phillips also contend that the courtesy hearing that they received does not satisfy due process. They cite well established law that the statute or ordinance itself must provide for notice and a hearing and that a gratuitous hearing does not cure a deficient law. (*Coe* v. *Armour Fertilizer Works* (1915) 237 U.S. 413, 424-425 [59 L.Ed. 1027, 1031-1032, 35 S.Ct. 625]; *Kash Enterprises, Inc.* v. *City of Los Angeles, supra,* 19 Cal.3d 294, 307, fn. 7.) This argument has merit.

A hearing granted as a matter of discretion is no substitute for due process. "'It is not enough that the owners may by chance have notice, or that they may as a matter of favor have a hearing. The law must require notice to them, and give them the right to a hearing and an opportunity to be heard.'" (*Coe* v. *Armour Fertilizer Works, supra,* 237 U.S. 413, 424-425 [59 L.Ed. 1027, 1031-1032].)

It is irrelevant that the question may have been fairly decided by a courtesy hearing or that the plaintiff lacks a defense on the merits. (*Coe, supra,* at p. 424 [59 L.Ed. at p. 1031]; *Carrera, supra,* at p. 727; *Merco Constr. Engineers, Inc., supra,* at pp. 166-167.) In *Merco Constr. Engineers, Inc., supra,* plaintiff received a hearing "after a fashion." (*Id.,* p. 167.) Nevertheless, this was held insufficient: "'The rule is well settled that to constitute due process of law in regard to the taking of property the statute should give the parties interested some adequate remedy for the vindication of their rights [citation].'" (*Ibid.*) A provision in the statute or ordinance providing a hearing ensures that the response of the administrative entity will be a settled and uniform procedure, rather than a haphazard one.

### IV.

We conclude that the ordinances here are unconstitutional for failure to provide for notice and a hearing either before or after the seizure of an uncontrollable biting or vicious dog. The judgment is reversed and remanded to the trial court for a determination whether the Phillips are entitled to attorneys' fees under Code of Civil Procedure section 1021.5, the private attorney general statute. The county is, of course, free to proceed against the Phillips and Missy under any other existing ordinance or statute that provides for notice and hearing prior to destruction of a dog. (E.g., Civ.

Code, § 3342.5.) But, the ordinance in question here ends, "not with a bang but a whimper."[3]

The Phillips are entitled to the immediate return of Missy.

The judgment is reversed. Petitioners are entitled to costs on appeal.

Stone, P. J., and Abbe, J., concurred.

A petition for a rehearing was denied August 8, 1986, and the opinion was modified on August 8 and 14, 1986, to read as printed above.

---

[3]See The Hollow Men (1925), with apologies to T. S. Eliot.