[No. B053962. Second Dist., Div. Four. May 16, 1991.]

ROLAND EDWARDS et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
PATRICIA WALTERS, Real Party in Interest.

**COUNSEL**

Demler, Armstrong & Rowland and Abilio Tavares, Jr., for Petitioners.

De Witt W. Clinton, County Counsel, and Frederick R. Bennett, Assistant County Counsel, for Respondent.

Michael A. Gutenplan and Major Langer for Real Party in Interest.

**OPINION**

**GEORGE, Acting P. J.**—In this habeas corpus proceeding, Roland Edwards, Pat Edwards, Linda Martin, Terry Martin, and Shavin Kingsmere

Kennels (collectively referred to as petitioners) challenge the order of the superior court finding them in contempt for their failure to comply with a writ of possession directing them to transfer possession of a championship show dog to Dr. Patricia Walters. Petitioners contend they were relieved of the obligation to deliver possession of the dog because they filed a "counterbond" pursuant to Code of Civil Procedure section 515.020.[1] For the reasons that follow, we direct the superior court to vacate its order holding petitioners in contempt.

## PROCEDURAL AND FACTUAL HISTORY

On April 5, 1990, Dr. Patricia Walters filed a complaint against petitioners, alleging a cause of action "for possession of personal property and for damages."[2] The complaint alleged as follows.

On September 10, 1988, Walters purchased from petitioners for $600 a female English Bull Terrier named Shavin Kingsmere Notty Nada (whom we take the liberty hereinafter of referring to as Nada).[3] The parties orally agreed that petitioners would exhibit Nada in dog shows which the parties mutually would select, and that petitioners would have the pick of the litter in the event Nada ever was bred. In order to secure petitioners' interest in Nada's offspring, petitioners were listed as "co-owners" on Nada's American Kennel Club registration certificate.

Several months later, while Nada and petitioners were participating at a dog show, Walters received from petitioners a written agreement containing additional terms, which were objectionable to Walters.[4] When Walters refused to sign the agreement, petitioners threatened she would never "see the dog alive again." Thereafter, on February 21, 1989, Walters executed the agreement under duress.

---

[1] All further statutory references are to the Code of Civil Procedure.

[2] Walters also alleged causes of action for "declaratory relief," "assault and battery," "intentional infliction of emotional distress," "negligent infliction of emotional distress," and "injunctive relief."

[3] Unlike others who have demonstrated less judicial restraint, we have successfully "resist-[ed] the temptation that grabbed hold of our colleagues who have written dog opinions, and will not try to dig up appropriate sobriquets" (*Phillips* v. *San Luis Obispo County Dept. etc. Regulation* (1986) 183 Cal.App.3d 372, 374 [228 Cal.Rptr. 101]), many of which are collected in *Phillips*. (*Id.*, at p. 374 et seq.)

[4] Among the terms of this agreement, a copy of which was attached to the complaint, were that Walters and petitioners would "co-own" Nada, that petitioners were granted a right of first refusal should Walters wish to sell the dog, and that, at the completion of Nada's show career, petitioners would select a stud dog with which to breed Nada and would have the pick of the litter.

Nada enjoyed a successful show career that year, becoming the 1989 Pedigree Award Winner for her breed and a Region of Merit Winner with the Bull Terrier Club of America.

In February 1990, counsel for Walters notified petitioners that Walters wished to terminate her relationship with them, further requesting that petitioners remove their names from Nada's registration certificate.[5]

A few days later, Walters heard noises emanating from her back yard, which is enclosed by a six-foot-tall block wall, and discovered petitioner Roland Edwards holding Nada under his arm. When Walters demanded that Edwards release Nada and leave Walters's property, Edwards punched and kicked Walters and scaled the wall, taking Nada with him.

On August 3, 1990, following a hearing, the superior court issued an order[6] granting a writ of possession (§ 512.080) and additionally directing petitioners to transfer possession of Nada to Walters pursuant to section 512.070[7] upon Walters's posting of a bond in the amount of $15,000 pursuant to section 515.010.[8] Instead of delivering the dog to Walters,

---

[5]In the complaint seeking damages, later filed by Walters, she alleged that petitioners engaged in unethical practices which led her to seek termination of their relationship, including "stuffing" Nada with food immediately prior to some shows in order to improve her appearance, and force-feeding vodka to another of their dogs so as to make the dog a "happy show-er."

[6]The order stated, in pertinent part: "3. The court finds . . . . [¶] c. Plaintiff has established the probable validity of [her] claim to possession of . . . that certain Bull Terrier Dog, known as 'Shavin Kingsmere Notty Nada,' AKC Reg. No. RB218897. [¶] d. There is probable cause to believe this property or some part thereof is located at . . . the personal residence of one of the named defendants, or under the care of a third party, subject to the dominion and control of defendants and at their behest. . . . [¶] 5. It Is Ordered [¶] a. The clerk of this court shall issue a writ of possession as provided in CCP 512.020, directing the levying officer within whose jurisdiction the property described in item 3c, or some part thereof, is located, to seize such property . . . . [¶] c. The writ shall issue upon plaintiff's filing of a written undertaking, as required by CCP 515.010, in the amount of $15,000.00 . . . . [¶] f. . . . It Is Further Ordered that, pursuant to C.C.P. § 512.070, within 48 hours following notification to counsel for defendants that the requisite understanding [sic] has been posted: [¶] g. Defendant[s] . . . shall transfer possession of the property described in item 3c to the plaintiff. Notice to Defendant[:] Failure to comply with any order of the court to turn over possession of such property to plaintiff may subject you to being held in contempt of court."

[7]Section 512.070 provides: "If a writ of possession is issued, the court may also issue an order directing the defendant to transfer possession of the property to the plaintiff. Such order shall contain a notice to the defendant that failure to turn over possession of such property to plaintiff may subject the defendant to being held in contempt of court."

[8]Section 515.010 provides, in pertinent part: "The court shall not issue . . . a writ of possession until the plaintiff has filed with the court an undertaking. The undertaking shall provide that the sureties are bound to the defendant for the return of the property to the defendant, if return of the property is ordered, and for the payment to the defendant of any

petitioners on August 10, 1990, filed a "counterbond" in the amount of $15,000 pursuant to section 515.020.[9]

On August 22, 1990, Walters filed a motion for an order compelling petitioners to "turn-over" Nada and finding them in contempt "for failure to previously comply." A hearing was held on August 29th, and on September 10, 1990, the superior court issued an order setting a contempt hearing, further ruling that the "counterbond" filed by petitioners did not "defeat the 'Turn-Over' Order previously issued by the Court" on August 3d. The superior court termed the "counterbond" to be "vacated."

On October 19, 1990, a hearing was held at which petitioners did not appear personally but were represented by counsel. The superior court found petitioners in contempt, issuing an "Order re Contempt" and continuing the matter to October 23, 1990, for sentencing on the contempt. On October 23d, a fine of $1,000 and a term of five days in county jail were imposed on each petitioner, the court staying the jail term and the fine until October 26, 1990.

On October 25, 1990, this court denied petitioners' application for an immediate stay of the superior court's order but, the same day, the California Supreme Court granted such a stay. Petitioners thereafter filed a petition for writ of mandate in the Supreme Court, which on January 17, 1991, issued an order treating the petition as one for writ of habeas corpus and directing the superior court to show cause before this court "why the judgments of contempt should not be vacated because petitioners' filing of a counterbond under Code of Civil Procedure Section 515.020 relieved them of the necessity of complying with the trial court's order, under Code of Civil Procedure section 512.070, that they transfer possession of the dog."

## DISCUSSION

Pursuant to section 515.020, subdivision (a), a "defendant may prevent the plaintiff from taking possession of property pursuant to a writ of possession . . . by filing with the court in which the action was brought an undertaking in an amount equal to the amount of the plaintiff's undertaking . . . ."[10] In the present case, petitioners filed such an undertaking in response to the

---

sum recovered against plaintiff. The undertaking shall be in an amount not less than twice the value of defendant's interest in the property . . . ."

[9]Section 515.020, subdivision (a), provides in pertinent part: "The defendant may prevent the plaintiff from taking possession of property pursuant to a writ of possession . . . by filing with the court in which the action was brought an undertaking in an amount equal to the amount of the plaintiff's undertaking required by Section 515.010."

[10]As a "domestic animal," Nada comes within the definition of property. (Civ. Code, §§ 654, 655.)

issuance of the writ of possession for Nada but, nevertheless, were held in contempt for failing to comply with the superior court's order pursuant to section 512.070 to transfer possession of the dog to Walters.

■ Walters contends that the filing of a "counterbond" pursuant to section 515.020 "may only defeat and prevent the enforcement of a writ of possession" but does not excuse petitioners' failure to comply with the order to transfer possession of the dog pursuant to section 512.070. The superior court contends the "counterbond" provisions of section 515.020 are inapplicable because the court "intended its order as a mandatory injunction." We are not persuaded by either contention.

The contention of the superior court requires little discussion. Whatever may have been the intent of the superior court, it did grant a writ of possession, not a mandatory injunction. Accordingly, we need not, and do not, determine whether the provisions of section 515.020 would apply had the superior court issued a mandatory injunction. The court having issued a writ of possession, petitioners' filing of a "counterbond" pursuant to the provisions of section 515.020 was sufficient to prevent Walters from taking possession of Nada pursuant to that writ.

Also without merit is Walters's contention that the filing of the "counterbond" does not excuse petitioners' failure to comply with the court's order pursuant to section 512.070 to transfer possession of Nada to Walters. Under that statute, which has not previously been interpreted in a published opinion, "[i]f a writ of possession is issued, the court may also issue an order directing the defendant to transfer possession of the property to the plaintiff." The Law Revision Commission comment concerning the 1973 enactment of section 512.070 observed that the statute "makes clear that the court has power to issue a 'turnover' order directing the defendant to cooperate in transferring possession. Such order is not issued in lieu of a writ but rather in addition to or in aid of a writ, permitting the plaintiff to select a more informal and less expensive means of securing possession." (Cal. Law Revision Com. com., 15A West's Ann. Code Civ. Proc., § 512.070 (1979) p. 447 [Deering's Ann. Code Civ. Proc., § 512.070 (1991 pocket supp.) p. 189].)

Thus a "turnover" order, issued pursuant to section 512.070, is not a separate remedy but rather an alternative means of enforcing a writ of possession. Because the filing of a "counterbond" pursuant to section 515.020 prevents the seizure of property by writ of possession, it also excuses compliance with a "turnover" order issued in aid of a writ of possession.

## DISPOSITION

The superior court is directed to vacate its order holding petitioners in contempt. Each party shall bear its own costs on appeal.

Goertzen, J., and Epstein, J., concurred.