[No. C000765. Third Dist. Mar. 18, 1988.]

MENEFEE & SON et al., Plaintiffs and Appellants, v.
DEPARTMENT OF FOOD AND AGRICULTURE et al.,
Defendants and Respondents.

**COUNSEL**

Turner & Sullivan, Robert J. Sullivan, Mary A. O'Gara, Elizabeth Ufkes Olivera and Marily Peatman Lerner for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, R. H. Connett, Assistant Attorney General, and William D. Cunningham, Deputy Attorney General, for Defendants and Respondents.

**OPINION**

**SPARKS, J.**—In this appeal we are called upon to determine the constitutionality of Food and Agriculture Code section 12648. This section purports to empower the Director of the Department of Food and Agriculture, without a hearing and under nonemergency circumstances, to seize and destroy a crop or commodity which has been treated with an unauthorized economic poison and thereafter shifts the burden to the grower to bring a lawsuit within 30 days to contest the seizure. We hold that the challenged statute deprives the grower of procedural due process and consequently is unconstitutional.

This case arose when the director issued an order of seizure pursuant to the challenged section against plaintiffs' lettuce and endive crops. The order declared that plaintiffs' field containing the crops was a public nuisance and that it was seized and any harvest prohibited. Plaintiffs timely filed a lawsuit in which they sought judicial relief through injunction and/or writ of mandate. They raised a number of challenges to Food and Agriculture Code section 12648 (all further statutory references are to this code unless otherwise stated) and the specific order in their case. Plaintiffs reiterate these challenges on appeal and contend that section 12648 is unconstitutional on

its face and as applied in this case, and that the order of the director was the result of an unconstitutional search and seizure.[1]

We find it unnecessary to resolve the constitutional validity of the search and seizure because we find the due process challenge to the statute to be dispositive. Section 12648 fails to provide the minimal due process protections required by the state Constitution and the order issued pursuant to it is void. We therefore reverse the judgment and direct that a new and different judgment be entered in favor of plaintiffs.

## FACTUAL AND PROCEDURAL BACKGROUND

The essential facts are not in dispute. The plaintiffs, Menefee & Son, Jerry Menefee and Menefee Hill Ranch Company, are the owners and operators of a field in Madera County consisting of approximately 76 acres. In January 1986 plaintiffs planted this field, called number 6, with lettuce and endive for the purpose of producing seed.[2] After the field was planted horned-lark birds began to attack the buds of the young seedlings. Jerry Menefee met with representatives of the Madera County Agricultural Commissioner and was advised he should use strychnine treated grain to control the birds. The treatment requires the fields to be prebaited with cracked corn and when the birds are accustomed to eating the corn to substitute strychnine treated corn. In early February 1986, the Menefee field was treated with strychnine laced corn with the assistance of the county commissioner's office. Good results were obtained, and Menefee was advised to contact the commissioner's office for further treatment if it became necessary.

On February 19, 1986, a biologist employed by Merced County advised Madera County officials that he overheard Jerry Menefee in a two-way radio conversation with someone named Jack. Menefee stated he had used Thimet on a lettuce field for bird control. Thimet is toxic to birds but is not

---

[1] In a peripheral contention, plaintiffs also argue that the order constituted an abuse of discretion. In part, this contention rests on their constitutional claims. Aside from those concerns, plaintiffs contend that the finding of economic advantage was arbitrary and capricious because the order was tardy, failed to consider the public interest, and was unnecessary in light of other available civil and criminal penalties. To the extent that this contention does not rest on their constitutional claims, we find it to be without merit.

[2] When a field is planted for seed the crop itself is not sold for consumption. Rather. the seed is harvested and sold to a dealer, who in turn sells the seed to farmers who produce crops which are sold for consumption. Plaintiffs submitted declarations from various experts which tended to show that any danger from the use of unauthorized chemicals on the crops would be dissipated since the crops were grown for seed rather than for consumption. We have no occasion to resolve that controversy.

authorized for use in bird control. It is also not authorized for application in lettuce or endive fields. On February 20, George Tipton, a deputy agricultural commissioner, went to the Menefee field to investigate. Thimet has a strong skunk-like odor, and as Tipton walked into the field he detected such a distinctive odor. He also observed granular material on the ground which resembled Thimet. When Menefee and his foreman came to the field Tipton spoke with them about the bird problem, but did not mention anything about the suspected use of Thimet. The following day Tipton returned to the field and took a soil sample. The sample proved positive for the presence of Thimet. On February 28, Tipton returned to the field for another soil sample. This sample proved positive for the presence of Furadan. Furadan, like Thimet, is a poison which is toxic to birds but which is not authorized for bird control or for use in lettuce and endive fields.

On June 12, 1986, the director issued an order pursuant to section 12648. The order states that the director found evidence plaintiffs had used Thimet and Furadan on field number 6 in violation of the permitted uses of those economic poisons. The order states the use of those poisons resulted in or could result in the creation of an unfair business advantage to plaintiffs in that (1) plaintiffs did not have to spend the time and effort to obtain a permit for the use of strychnine for bird control, (2) they remained outside the permit system which places restrictions of the use of restricted materials, and (3) they had Thimet and Furadan on hand and saved the expense of purchasing an approved material. The director declared field number 6 a public nuisance, seized it and prohibited harvest, and specified that if no action was filed within 30 days the crop could be ordered destroyed.[3]

On July 8, 1986, the director agreed to extend the time for plaintiffs to file an action to September 1, 1986. Plaintiffs' complaint for an injunction and/or writ of mandate was filed on July 25, 1986. The trial court issued a temporary restraining order which permitted plaintiffs to harvest the seed crop but which restrained them from selling, transferring, encumbering, or removing any part of the crop from the confines of field 6 pending a hearing for an injunction.

On August 8, 1986, the director adopted an amended order in the matter. The amended order adds a finding that the use of Thimet and Furadan resulted or reasonably could have resulted in the creation of a hazard to

---

[3] The order, like section 12648 itself, did not give plaintiffs any right to contest its issuance administratively. However, it did advise plaintiffs that they could petition the director for a reduction of the total acreage and the director could, at his discretion, grant a reduction upon a clear showing that the application of chemicals was limited to an identifiable portion of the field.

human health. The basis for this finding was, essentially, that since those chemicals are not registered for use with lettuce and endive they must be presumed unsafe. The order also states that exposure to Furadan can create a health hazard to field workers.

Following a hearing the trial court dissolved the temporary restraining order and denied injunctive relief and the petition for a writ of mandate. Pursuant to stipulation of the parties the court entered an order which allowed plaintiffs to harvest and store the lettuce and endive seed with appropriate restrictions pending the result of this appeal. This appeal then followed.

## DISCUSSION

At the time this dispute arose section 12648 provided: "Notwithstanding any other provision of this code, if the director finds evidence that a crop, commodity, or site has been treated with an economic poison not registered pursuant to Chapter 2 (commencing with Section 12751) for use on the crop, commodity, or site and the treatment has resulted in, or could reasonably result in, the creation of a hazard to human health or an unfair business advantage, the crop or commodity may be declared by the director to be a public nuisance and may be seized and held to prevent harvest and sale. The director shall hold the crop or commodity for 30 days, and if no action has been filed to contest the seizure, the director may order that the crop or commodity be destroyed."[4]

In making his order in this case the director expressly disclaimed an intent to rely upon other provisions of law which empower him to prevent the harvesting and use of crops after an improper chemical application and limited his order to the provisions of section 12648.

■ Although due process of law is guaranteed by both the the federal and state Constitutions, we have no occasion to reach the federal question.

[4]Section 12648 was amended effective January 1, 1987. (Stats. 1986, ch. 697, § 1.) The amended version provides that the director may take action "upon making a finding" of the improper use of an economic poison and "upon making a further finding" that the use could result in a hazard to human health or an unfair business advantage.

An "economic poison" is defined as including any of the following: "(a) Any spray adjuvant. [¶] (b) Any substance, or mixture of substances which is intended to be used for defoliating plants, regulating plant growth, or for preventing, destroying, repelling, or mitigating any and all insects, fungi, bacteria, weeds, rodents, or predatory animals or any other form of plant or animal life which is, or which the director may declare to be, a pest, which may infest or be detrimental to vegetation, man, animals or households, or be present in any environment whatsoever." (§ 12753.)

By its terms, article I, section 7 of the California Constitution provides that "[a] person may not be deprived of life, liberty, or property without due process of law." There can be no dispute that plaintiffs' interest in their growing crops is an interest that is protected by the procedural due process aspects of the state Constitution. (See *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 206 [124 Cal.Rptr. 14, 539 P.2d 774].) Since a significant property interest is at stake, neither the egregiousness of the alleged misconduct nor the apparent lack of a meritorious defense can obviate the requirement that the plaintiffs be accorded minimal due process protections. (*Carrera* v. *Bertaini* (1976) 63 Cal.App.3d 721, 727 [134 Cal.Rptr. 14].)

█ The procedural requirements that are necessary to satisfy due process necessarily vary according to the competing interests of the government and the citizen. (*Ibid.*) "Although 'due process' encompasses a broad range of safeguards, in essence the concept guarantees a fundamentally fair decision-making process." (*People* v. *Ramos* (1984) 37 Cal.3d 136, 153 [207 Cal.Rptr. 800, 689 P.2d 430].) Thus, at a minimum, due process requires notice and an opportunity for a hearing. (*Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 307 [138 Cal.Rptr. 53, 562 P.2d 1302].) Normally notice and an opportunity for a hearing must precede even a temporary deprivation of a property interest. (*Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d at pp. 215-216.) However, in some emergency situations the legitimate and overriding interests of the government may permit summary action. (*Ibid.*; *Carrera* v. *Bertaini, supra,* 63 Cal.App.3d at p. 728.) In such circumstances the opportunity for a hearing may be postponed but not eliminated. (*Kash Enterprises, Inc.* v. *City of Los Angeles, supra,* 19 Cal.3d at p. 308.) And the fact that the affected party may institute a judicial action is not a sufficient opportunity for a hearing. As the high court emphasized in *Kash Enterprises,* "[n]ot one of the scores of recent procedural due process decisions, however, suggests that the availability of a collateral judicial remedy can sustain a seizure procedure which provides absolutely no hearing whatsoever, either before or after the taking. Acceptance of [that argument] would in effect read out almost all of the protections afforded by a contemporary procedural due process doctrine, and would place on the party whose property has been taken the additional financial burden of instituting an action for the property's return." (*Id.,* at p. 309; citations omitted.)

█ When section 12648 is measured against these minimum constitutional requirements it suffers from glaring deficiencies. It permits the director to seize the property of a person without any notice or opportunity to be heard and without any requirement that authorization be obtained from a

neutral judicial officer. (See *Sokol* v. *Public Utilities Commission* (1966) 65 Cal.2d 247, 255-256 [53 Cal.Rptr. 673, 418 P.2d 265].) To be sure, contaminated food is a matter which frequently requires emergency seizure. (*Carrera* v. *Bertaini, supra,* 63 Cal.App.3d at p. 728.) But the challenged statute makes no effort to limit its application to emergency situations and instead broadly applies to any misuse of chemicals without regard to whether an emergency appears. The mere fact that summary seizure may be necessary in some instances does not validate a statute that permits ex parte seizure without any attempt to narrowly draw into focus the extraordinary circumstances in which summary seizure may be required. (*Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d at p. 216: *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536, 541 [96 Cal.Rptr. 709, 488 P.2d 13].) The facts of this case amply demonstrate this deficiency. Although the department had notice of the use of Thimet and Furadan by plaintiffs in February 1986 and had scientific confirmation of the presence of Thimet and Furadan in the field 6 soil by early March, no action was taken by the department until June 12, 1986.[5] Any claim that this case presents extraordinary circumstances justifying summary seizure would be specious.

■ Bad as the failure to provide preseizure notice and a hearing may be, an even greater deficiency arises from the failure to provide any hearing whatsoever. Although the statute authorizes the seizure of a grower's property, "it does not accord the owner the most basic safeguard demanded by due process—an opportunity to be heard on the merits of the taking, either before or after the taking." (*Kash Enterprises, Inc.* v. *City of Los Angeles, supra,* 19 Cal.3d at p. 309.) The fact that an owner may institute a judicial proceeding for the return of the property is simply no substitute for the requirement that an owner be accorded a fair hearing on the merits of the seizure. (*Ibid.*; see *In re Harris* (1968) 69 Cal.2d 486, 490 [72 Cal.Rptr. 340, 446 P.2d 148].)

■ In any event, even if we concluded that the availability of a judicial action could serve as a substitute for an administrative hearing, we would still find section 12648 deficient. It compels the owner to institute the action

---

[5] In fact the delay of the department is one of plaintiffs' primary complaints in this matter. Plaintiffs were under contract to provide 76 acres of lettuce and endive seed to Ferry-Morse Seed Company. They assert that if they had been promptly notified of the problem when the department first discovered it they could have had the option of simply discing the field and planting an alternative crop, and could have used another field to fulfill the contract to grow lettuce and endive seed. The department's delay not only meant that plaintiffs spent time and money caring for the crop which the department now seeks to destroy, it also placed them too far into the growing season to select any other alternatives.

rather than the department. (*Ibid.*; see *Carrera* v. *Bertaini, supra,* 63 Cal.App.3d at p. 729.) It gives the owner just 30 days to institute an action or his crop will be destroyed and provides no form of compensation in the event the deprivation of property proves to have been wrongful. (*Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d at p. 209.) The statute does not require notice of the type of proceeding which may be instituted. (*In re Harris, supra,* 69 Cal.2d at p. 490.) And, even more critically, it does not provide for the type of judicial hearing which would be essential to provide due process. In short, if a judicial proceeding is the owner's first and only opportunity to have a hearing on the merits of the seizure, then it is essential that the department be required to bear the burden of proof on all issues and the statute must so provide.

In this case plaintiffs instituted an action for injunctive relief and/or writ of mandate, which appear to be logical remedies in the absence of statutory guidance. The trial court, doubtless accustomed to reviewing administrative decisions, applied the usual test for review of such decisions, the abuse of discretion standard. As the trial court recognized, this is a stringent standard which makes it very difficult for the applicant to obtain relief. However, such a standard of "review" is wholly inappropriate when the owner's appearance before the court is his first and only opportunity to contest the merits of the department's decision to seize his property. The result of the proceedings in this case is that to the date of this decision the department has not yet been required to appear before an impartial hearing officer and carry the burden of proving any of the facts upon which it relies in seizing the Menefee crop. It follows that the plaintiffs have not yet been accorded the minimal due process to which they are entitled before the government may interfere with their property interests.

For these reasons we conclude that section 12648 is unconstitutional both on its face and as applied in this case.[6] The director's decision to seize the Menefee crops pursuant to section 12648 is void. The plaintiffs are entitled to a judgment in their favor requiring the director to vacate his decision to seize the crops, and to take no further action against the plaintiffs pursuant to section 12648.

---

[6] Our decision does not deprive the department or the director of the power to protect the public from contaminated food or to enforce economic poison regulations. Other provisions of law enable the director to seize any lot of produce which contains spray residue or other deleterious ingredients. (§ 12601 et seq.) And the violation of pesticide regulations can subject the violator to substantial criminal or civil penalties. (§§ 12996, 12998.)

The judgment is reversed and the cause is remanded to the trial court with directions to enter judgment in favor of plaintiffs in accordance with the views expressed in this opinion.

Puglia, P. J., and Marler, J., concurred.