[No. F015549. Fifth Dist. July 8, 1992.]

SANDRINI BROTHERS, Plaintiff and Appellant, v.
HENRY J. VOSS, as Director, etc., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

_____

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Klein, Wegis, DeNatale, Hall, Goldner & Muir, Ralph B. Wegis and David L. Saine for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, R. H. Connett, Assistant Attorney General, Walter E. Wunderlich and Kenneth R. Hulse, Deputy Attorneys General, for Defendant and Appellant.

## OPINION

### STONE (W. A.), Acting P. J.—

#### PROCEDURAL HISTORY

Pursuant to Food and Agriculture Code section 12648[1] the Department of Food and Agriculture and its director (collectively the Department) issued a notice of seizure and opportunity for hearing to Sandrini Brothers (Sandrini), a general partnership engaged in farming. The notice informed Sandrini the Department intended to seize certain grapes prior to a hearing because the Department believed the grapes had been treated with an "economic poison" and would be harvested before completion of the hearing process. The notice also advised Sandrini of its right to challenge the notice of seizure within 15 days and to a hearing within 5 days of a request. Sandrini requested a hearing, following which the hearing officer sustained the Department's seizure.

Sandrini filed a petition for writ of administrative mandamus in the superior court pursuant to Code of Civil Procedure section 1094.5 seeking a ruling that the seizure was wrongful and requesting an award of damages pursuant to Code of Civil Procedure section 1095.

The trial court, relying upon *Menefee & Son v. Department of Food & Agriculture* (1988) 199 Cal.App.3d 774 [245 Cal.Rptr. 166], found section 12648 unconstitutional on its face because the section does not expressly provide a means for compensation in the event the Department seizes property wrongfully. The court limited its analysis to the pleadings; it did not consider evidence produced before the court. It entered judgment in favor of Sandrini and vacated the findings and order of the hearing officer. The court denied Sandrini's request for attorney fees pursuant to Government Code section 800, Code of Civil Procedure section 1021.5, and 42 United States Code section 1988. The Department appeals from the determination that section 12648 is unconstitutional, and Sandrini cross-appeals from the order denying attorney fees.

---

[1] All references to section 12648 will be to Food and Agriculture Code section 12648.

DISCUSSION

THE DEPARTMENT'S APPEAL

I. *Section 12648 and Provision for Compensation in the Event of a Wrongful Seizure.*

At the times relevant to the decision in *Menefee & Son* v. *Department of Food & Agriculture, supra,* 199 Cal.App.3d 774, section 12648 read: " 'Notwithstanding any other provision of this code, if the director finds evidence that a crop, commodity, or site has been treated with an economic poison not registered pursuant to Chapter 2 (commencing with Section 12751) for use on the crop, commodity, or site and the treatment has resulted in, or could reasonably result in, the creation of a hazard to human health or an unfair business advantage, the crop or commodity may be declared by the director to be a public nuisance and may be seized and held to prevent harvest and sale. The director shall hold the crop or commodity for 30 days, and if no action has been filed to contest the seizure, the director may order that the crop or commodity be destroyed.' " (199 Cal.App.3d at p. 780, fn. omitted.) *Menefee* determined this prior version of section 12648 was unconstitutional both on its face and in its application because it made no provision for preseizure notice and hearing, or for "any hearing whatsoever." (199 Cal.App.3d at pp. 782-783.) The court held an action by a party challenging a seizure was an insufficient procedural safeguard because the statute provided no hearing procedure before commencement of a judicial action.

However, the *Menefee* court did not end its discussion of the procedural due process inadequacies of the statute upon finding notice and hearing deficiencies. In addition, the court stated:

"In any event, even if we concluded that the availability of a judicial action could serve as a substitute for an administrative hearing, we would still find section 12648 deficient. It compels the owner to institute the action rather than the department. (*Ibid.*; see *Carrera* v. *Bertaini* [1976] 63 Cal.App.3d [721,] 729 [134 Cal.Rptr. 14].) It gives the owner just 30 days to institute an action or his crop will be destroyed and *provides no form of compensation in the event the deprivation of property proves to have been wrongful. (Skelly* v. *State Personnel Bd.* [1975] 15 Cal.3d [194,] 209 [124 Cal.Rptr. 14, 539 P.2d 774].) The statute does not require notice of the type of proceeding which may be instituted. (*In re Harris* [1968] 69 Cal.2d [486,] 490 [72 Cal.Rptr. 340, 446 P.2d 148].) And, even more critically, it does not provide for the type of judicial hearing which would be essential to provide

due process. In short, if a judicial proceeding is the owner's first and only opportunity to have a hearing on the merits of the seizure, then it is essential that the department be required to bear the burden of proof on all issues and the statute must so provide." (199 Cal.App.3d at pp. 782-783, italics added.)

In response to *Menefee* the Legislature amended section 12648, effective September 15, 1988, to provide, in part:

"(a) Notwithstanding any other provision of this code, a site within this state that has been treated with, or a plant, crop, or commodity, whether grown in this state or elsewhere, that has been treated with, or grown on a site treated with, an economic poison that is not registered for use on that plant, crop, commodity, or site is a public nuisance and may be seized by order of the director.

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"(c) The director shall provide notice to the owner or person in possession or control of the plant, crop, commodity, or site prior to seizure, unless the director has reason to believe that prior notice would result in the director's loss of control of that plant, crop, commodity, or site, in which case, notice shall be given as soon as practical, but, in any event within five days of the seizure. The notice shall specify the grounds for the seizure and provide that the owner or person in possession or control, within 15 days of receipt of the notice, may request a hearing before the director to contest the seizure or rebut the presumptions specified in subdivision (b). The hearing shall be held not later than five days from the date the owner or person's request is received by the director. The director shall render a written decision within five days of the hearing or within five days of the expiration of the time to request a hearing if no hearing was requested. The decision shall either release the plant, crop, commodity, or site from seizure or make any of the following orders:

"(1) Destruction of the plant, crop, or commodity.

"(2) Prohibition of harvest or sale of the plant, crop, or commodity grown on the site.

"(3) Prohibition of the use or planting of the site, which may be for the period of any plant back time specified for the economic poison used on the site.

"(4) Any other appropriate action or measure.

"(d) Review of the decision of the director may be sought by the owner or person in possession or control of the plant, crop, commodity, or site pursuant to Section 1094.5 of the Code of Civil Procedure."

In this case the trial court expressly limited its ruling to the issue whether section 12648 violates due process requirements because it does not provide a means of compensation for a wrongful seizure. The court wrote, in part:

"9. As indicated, *Menefee* found as one of several 'glaring defects' that the predecessor statute contravened the state constitution in that it provided 'no form of compensation in the event the deprivation of property proves to happen [*sic*] wrongful.' [(199 Cal.App.3d at p. 783.)] *Menefee* relied upon *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194. *Skelly* concerned due process protections available under the Civil Services [*sic*] Act, the court having recognized a 'property interest' in state employment. At page 209, the specific page cited in *Menefee*, the court summarized state and federal cases, concluding that a balancing process, in which competing governmental and personal interests are weighed, are at the heart of the contemporary procedural due process model. Among the 'factors' in the balance, the Court observed, is whether the person affected by the governmental action 'will be entitled to adequate compensation in the event the deprivation of his property interest proves to have been wrongful.' *Menefee takes the principle a step further, finding a constitutional demand that the statutory scheme itself provide the mechanism for compensation. There is none on the face of the present statute.*

". . . . . . . . . . . . . . . . . . . . . . . . .

"13. In this regard, the key statutory language is 'release' 'any other appropriate action or measure' and 'contest the validity.' Although in any given instance, it may be true that a prompt 'release' of the crops will eliminate a legitimate claim for compensation, 'release' cannot be interpreted to be the equivalent of 'compensation.' Further, because this is a non-Administrative Procedure Act hearing, the hearing officer need have no legal training nor any special sensitivity to the subtleties of damage measures; 'any other appropriate action or measure,' cannot then be reasonably construed to include compensation. The phrase 'contest the validity,' although it may open the door to inquiries into the exercise of the powers the statute grants to the director, neither of itself nor in context suggests that the director must compensate should he fail to prevail at the hearing. Finally, and perhaps more important than the nuances of a single word or series of phrases, is this: subdivisions (b) and (c) define the issues, and the right to present evidence of 'damages' or 'compensation' or, for that matter, even the

relevance of such evidence, are nowhere made plain or within the reasonable connotative reach of the statutory language.

"14. In light of the arguments presented and under the compulsion of *Menefee*, the Court is constrained to rule that Food and Agricultural Code section 12648 violates procedural due process guaranteed by the California Constitution, Article I, Section 7(a), in that the extant enactment, like its predecessor, fails to provide a means by which compensation may be obtained in the event of a wrongful seizure of property. Save for the question of attorney's fees, all other issues are therefore moot." (Italics added.)

We cannot tell whether the *Menefee* court intended its language regarding compensation in the event of a wrongful seizure to be an alternative ground for its holding, or a gratuitous comment for the guidance of other courts and the Legislature. However, the only authority the *Menefee* court cites in support of the proposition—*Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774]—does not require that a statute, in order to satisfy due process requirements, spell out specifically the remedy for compensation available to one whose property has been wrongfully seized. *Skelly* states:

"In balancing such 'competing interests involved' so as to determine whether a particular procedure permitting a taking of property without a *prior* hearing satisfies due process, the high court has taken into account a number of factors. Of significance among them are the following: . . . whether such person will be entitled to adequate compensation in the event the deprivation of his property interest proves to have been wrongful. [Citations.]" (*Id.* at p. 209, italics original.)

It is readily apparent *Skelly* simply recognizes that a remedy for compensation must be available for wrongful deprivation of property, not that the statute which creates an administrative procedure for seizure of property must define that remedy. Nor do we perceive any logical reason for such a requirement. Indeed, the trial court in this action, after discussing *Skelly*, recognized, "*Menefee* takes the principle a step further, finding a constitutional demand that the statutory scheme itself provide the mechanism for compensation." Nevertheless, the trial court understandably felt constrained by the language of *Menefee*.

We therefore decline to follow *Menefee* insofar as it can be read to offer an alternative holding that due process requires a statute to provide an articulated mechanism for compensation in the event of a wrongful seizure.

Rather, consistent with *Skelly*, we conclude a statute satisfies due process if a means of compensation in fact exists.[2]

██ Accordingly, we proceed with our analysis by determining whether in fact a remedy exists by which one who has suffered damage as the result of a wrongful seizure pursuant to section 12648 may recover compensation. In doing so, we recognize there are two stages at which a determination may be made that crops or related property have been seized wrongfully—at an administrative hearing before the director (§ 12648, subd. (c)) or upon review by a court in a mandamus proceeding pursuant to Code of Civil Procedure section 1094.5 (§ 12648, subd. (d)). It is quite clear to us that at either stage of a proceeding the framework exists for the recovery of damages by an owner of wrongfully seized property, apart from the pivotal question of governmental immunity, which we shall deal with later.

### A. The Director's Determination of a Wrongful Seizure.

If the director, as hearing officer pursuant to section 12648, subdivision (c), determines a seizure was wrongful and orders return of the property, but nevertheless damage occurred while the property was under seizure, does the property owner have an action for compensation? We conclude the answer is "Yes."

Government Code section 911.2 provides, in part:

"A claim relating to a cause of action for . . . injury to . . . personal property or growing crops shall be presented as provided in Article 2 . . . not later than six months after the accrual of the cause of action."

In the event the public entity[3] denies the claim or agrees to compensate in an amount less than that claimed, the aggrieved party may file a lawsuit for damages. Government Code section 815.2, subdivision (a) authorizes suit against a public entity for an act or omission of an employee acting within the scope of employment, if, apart from the section, the employee's conduct would give rise to a cause of action against the employee.

The United States Supreme Court has recognized that a state statutory action for damages following an erroneous seizure satisfies the requirement of procedural due process:

---

[2]The Fourteenth Amendment to the United States Constitution provides no state shall "deprive any person of life, liberty, or property, without due process of law; . . ." Similarly, the Constitution of the State of California in article I, sections 7 and 15, provides the same protection. The state provision has been considered to be co-extensive with the federal (*Kruger* v. *Wells Fargo Bank* (1974) 11 Cal.3d 352, 366-367 [113 Cal.Rptr. 449, 521 P.2d 441, 65 A.L.R.3d 1266]), and the two provisions have been held to have the same scope and purpose (*Russell* v. *Carleson* (1973) 36 Cal.App.3d 334, 342 [111 Cal.Rptr. 497]).

[3]In this example, the entity is the State Board of Control. (Gov. Code, § 915.)

"In such cases, the normal predeprivation notice and opportunity to be heard is pretermitted if the State provides a postdeprivation remedy. In *North American Cold Storage Co.* v. *Chicago*, 211 U.S. 306 (1908), we upheld the right of a State to seize and destroy unwholesome food without a preseizure hearing. The possibility of erroneous destruction of property was outweighed by the fact that the public health emergency justified immediate action and the owner of the property could recover his damages in an action at law after the incident." (*Parratt* v. *Taylor* (1981) 451 U.S. 527, 538-539 [68 L.Ed.2d 420, 430-431, 101 S.Ct. 1908].)

In *Parratt*, the respondent was an inmate who ordered hobby materials through the mail. Although the materials arrived at the prison, they were apparently lost through mishandling and were never recovered. The respondent initiated an action against the prison warden and the prison hobby manager. The action was brought in federal court rather than state court, despite the existence of a state tort claims procedure. (*Parratt* v. *Taylor*, *supra*, 451 U.S. at p. 530 [68 L.Ed.2d at pp. 425-426].)

The remedy in *Parratt* which satisfied minimal due process requirements was the statutory state tort claims procedure: "[T]he State of Nebraska has provided respondent with the means by which he can receive redress for the deprivation. The State provides a remedy to persons who believe they have suffered a tortious loss at the hands of the State. See Neb. Rev. Stat. § 81-8,209 et seq. (1976). Through this tort claims procedure the State hears and pays claims of prisoners housed in its penal institutions. This procedure was in existence at the time of the loss here in question but respondent did not use it." (*Parratt* v. *Taylor*, *supra*, 451 U.S. at p. 543 [68 L.Ed.2d at p. 434].)

### B. *A Court's Determination of Wrongful Seizure Following a Mandamus Hearing Pursuant to Code of Civil Procedure Section 1094.5.*

In the event of an adverse ruling following a hearing by the director (i.e., that the seizure was lawful), section 12648, subdivision (d) authorizes a person whose property has been seized to proceed by petition for writ of mandate pursuant to Code of Civil Procedure section 1094.5. Section 1095 of the Code of Civil Procedure authorizes the recovery of damages in such a proceeding, and satisfies the requirement for a vehicle for recovery of compensation in the event of wrongful seizure discussed in *Skelly* v. *State Personnel Bd.*, *supra*, 15 Cal.3d at page 209.

## C. *Governmental Immunity.*

■ We now come to the issue which we have previously described as pivotal—whether the State of California is immune from liability for damages suffered by a property owner resulting from a wrongful seizure pursuant to section 12648.[4]

The question of whether immunity will apply to the director's action of ordering a seizure pursuant to section 12648 turns upon whether that act is viewed as discretionary or ministerial. Liability does not stem from acts or omissions resulting from the exercise of discretion vested in the public employee. (Gov. Code, § 820.2.)[5]

In *Johnson v. State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352], the court wrestled with the distinction between discretionary and ministerial acts by public employees and the policy behind the creation and definition of each category. The *Johnson* court provided an historical approach to the development of the immunities and the impact upon them, if any, of the passage of the 1963 Tort Claims Act in California. (*Id.* at p. 798.) The existing policy, that liability is the rule and immunity the exception, was reiterated. (*Ibid.*)

In *Johnson* and subsequent cases, the court recognized that virtually every ministerial act involves some degree of choice, discretion and judgment on the part of the acting employee. Driving a nail was a quoted example in *Johnson*. (69 Cal.2d at p. 788; see also *Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 793 [221 Cal.Rptr. 840, 710 P.2d 907].) Consequently, the court rejected entering into a semantic approach to determine "as a purely literal matter" where the line between these two types of acts begins and ends. (69 Cal.2d at p. 788.)

Discretionary acts were found to be those involving basic policy decisions, whereas ministerial acts were those necessary to implement that policy. (*Johnson, supra,* 69 Cal.2d at pp. 793-797; see also *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, 445 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].)

[4]It is settled that a governmental immunity provision which bars liability in a damage action likewise bars recovery in a mandamus action brought pursuant to Code of Civil Procedure sections 1094.5 and 1095 (*HFH, Ltd. v. Superior Court* (1975) 15 Cal.3d 508, 519-520 [125 Cal.Rptr. 365, 542 P.2d 237]). Therefore, in our discussion regarding governmental immunity we do not distinguish between actions brought pursuant to Government Code section 815.2, subdivision (a), and mandamus actions brought pursuant to Code of Civil Procedure section 1094.5.

[5]In this case the Department not only concedes that governmental immunity does not bar recovery of compensation by an owner of wrongfully seized property, it affirmatively asserts that position.

Subdivision (a) of section 12648 provides that after determining a crop has been treated or grown with an unregistered economic poison, the director "may" order it seized. The use of the word "may" in this instance does not connote intent by the Legislature for the director to exercise the type of discretion contemplated by the *Johnson* court when defining instances when immunities apply. A broad policy or planning decision is not involved. While acknowledging the director has been given some choice by virtue of this use of "may," the choice is within the *Johnson* view of a ministerial decision necessary to implement the broader policy of protecting the public health. It is true that to act upon information an unregistered economic poison is present on a crop, and to act by way of a seizure rather than other alternatives possibly available to the director, involves judgment and even discretion in the ordinary sense; however, what becomes clear upon a reading of *Johnson* is that discretion in the ordinary sense is not the definition the court found the Legislature intended courts to use when deciding if a particular act falls within the immunity provisions.

Therefore, we conclude section 12648 is not unconstitutional on its face. Contrary to the finding of the trial court, we hold that the section does provide an adequate means by which the owner of wrongfully seized property may recover compensation.

SANDRINI'S APPEAL

II.   *Attorney Fees.**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

DISPOSITION

The judgment is reversed and the cause remanded to the superior court for further proceedings. Each party is to bear its respective costs on appeal.

Thaxter, J., and Harris, J., concurred.

---

*See footnote, *ante*, page 1398.