Filed 8/19/15

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C077166 |
| v. | (Super. Ct. No. 14F01410) |
| MALCOM SHEPARD, SR., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Jaime R. Roman, Judge.  Affirmed.

Law Offices of Robert D. Salisbury and Robert D. Salisbury, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri, Deputy Attorney General, for Plaintiff and Respondent.

Defendant Malcolm Shepard, Sr., appeals from an order denying his petition for a certificate of rehabilitation pursuant to Penal Code section 4852.01.[1]  He contends the

---

[1]    Undesignated statutory references are to the Penal Code.

1

trial court abused its discretion and violated his constitutional right to due process by denying the petition in his absence, after the bailiff allegedly told him the petition had already been denied, handed him the court's tentative ruling, and sent him home. The problem is there is no evidence in the record indicating defendant was sent home, as he claims on appeal. Based on the lack of evidence in the record, we cannot conclude defendant was deprived of the hearing contemplated by section 4852.01 et seq. in violation of his right to due process.

We asked the parties for supplemental briefing on the question of whether defendant was deprived of the right to counsel in light of the fact it did not appear from the record of the hearing that defendant was represented by counsel at that time. Section 4852.04 provides in relevant part: "Each person who may initiate the proceedings provided for in this chapter *shall be entitled to receive counsel . . . .*" (Italics added.) Section 4852.08 provides in relevant part: "During the proceedings upon the petition, the petitioner may be represented by counsel of his [or her] own selection; *if he* [or she] *has no such counsel he* [or she] *shall be represented by the public defender*, if there is one in the county . . . ." (Italics added.) After our request for supplemental briefing issued, the record was augmented to include the reporter's transcripts from two prior court dates. On each date, the trial court continued the rehabilitation hearing. On the second date, about one week prior to the hearing, the transcript reveals defendant was represented by the public defender. Thus, it appears the terms of sections 4852.04 and 4852.08 have been satisfied, i.e., defendant "receive[d] counsel" and, having not retained "counsel of his own selection," was "represented by the public defender," at least prior to the hearing date. The record does not reveal whether anything happened to prevent both defendant and the public defender from appearing at the hearing itself. However, because the record does indicate defendant was aware of his right to counsel, arrived at the courthouse on the hearing date, and left without participating in the hearing, we conclude

2

defendant waived not only his right to the hearing, but also the right to counsel at that hearing. We therefore affirm the judgment. We note, however, defendant may file a new petition and either retain counsel or have the public defender appointed to represent him during the proceedings on the new petition. (See *People v. Lockwood* (1998) 66 Cal.App.4th 222, 230.)

## BACKGROUND

In 1991, defendant pled guilty to the crime of forcible rape (§ 261, subd. (a)(2)) and admitted using a firearm in the commission of the offense (§ 12022.3, subd. (a)). He was sentenced to serve six years in state prison and was released on parole in 1994. In 1995, while still on parole, defendant was convicted of one count of possession of cocaine base for sale (Health & Saf. Code, § 11351.5), one count of possession of a controlled substance for sale (Health & Saf. Code, § 11351), and one count of possession of a firearm by a convicted felon (former § 12021, now § 29800, Stats. 2010, ch. 711, § 6). He was sentenced to serve 11 years in state prison and was released on parole in 2004, which was discharged in 2007.

In February 2014, defendant filed a petition for certificate of rehabilitation pursuant to section 4852.01 et seq. Tracking the statutory requirements for granting such a petition, defendant declared: "During the period of my rehabilitation, I have lived an honest and upright life, conducted myself with sobriety and industry, and exhibited good moral character. I have conformed to and obeyed all the laws of the land." (See § 4852.05.)

The prosecution opposed the petition in a written report filed in June 2014. After noting defendant satisfied the minimum time requirements for filing such a petition, and chronicling defendant's criminal history, the report noted defendant was 44 years old with 3 children, he has lived in Sacramento County since his release from prison in 2004, and he has a valid California driver's license with no departmental actions taken against

his driving privilege. The report then provided defendant's post-release employment history, noting he worked at Power Plus since January 2005. The company's general manager, Aaron Haney, wrote: "'Malcolm has been an employee here at Power Plus since 1/2005 to present. He started out as our shop worker and shortly after that became our Lead Installer and in 2007 I promoted him to Operations Manager. He is currently in charge of both of our Northern California offices. His responsibilities consist of payroll, design and layout[,] P&L statements and equipment installation. He also works with the installers on building electrical skills and training.' [¶] 'Malcolm has been an awesome employee, dependable and trustworthy. He has built a very good working relationship with everyone on his team and has earned their respect due in part to working side by side with the installers on all of the more technical applications and going over the procedures in detail.'"[2]

The report also set forth the contents of seven reference letters. For our purposes, two examples will suffice. Aziza Brown, who knew defendant for over 10 years wrote: "'I would consider him to be a great example of a positive role model to minority youth and young adults in the greater Sacramento California area. He always conducts himself in a respectful manner when dealing with both professional as well as personal aspects of his life. Malcolm is very conscious about his financial stability and is so very grateful that he has a second chance at life. I personally have two African American sons and I appreciate the time he spends with them mentoring them on life and the importance of school, being respectful young men and conducting themselves in a positive manner.'" Arthur Hatfield, who knew defendant for 9 years, wrote: "'In the time I have known Malcolm, he has been a good friend and coworker. He is highly dedicated to work and

---

[2]     The report then noted defendant worked for Milgard Windows from July 2004 to February 2005, but the company denied his having worked there.

4

his family. He has continually bettered himself, his station in life, and in the life of his family. I have never known Malcolm to use drugs; I have only seen him drink socially. In my opinion, Malcolm is an honest person and not afraid to tell you the truth no matter what. As to Malcolm's financial responsibility, I think he is quite responsible. In the time I have known him he went from living in an apartment on the south side of Sacramento to owning half a duplex to owning a home all the while raising two kids that live with him and one of which is in college now and supporting an[o]ther that lives with her mother. In my opinion, the community views Malcolm as just an ordinary guy who works hard to have the things he wants and to take care of the people he loves.'"

The report then set forth defendant's statements regarding his prior crimes, which formed the basis for the prosecutor's opposition to his petition for certificate of rehabilitation. While defendant took "'full responsibility'" for his 1995 crimes, he provided the following explanation for his 1991 rape conviction: "'I was accused of raping a girl inside of a known drug house. I was in the house with multiple people, but I did not assault anyone. I am guilty of selling drugs to numerous people inside this house. So I take full responsibility for putting myself in this situation. I did not get a chance to prove my innocence due to being coerced into a plea bargain by my attorney and also being put in solitary confinement with no visits from my family until I accepted the plea. I don't even know if an assault actually took place because I left before most of the people that were in the house.'"[3] The report further provided defendant's statement regarding his reasons for filing the petition for certificate of rehabilitation: "'I really feel

---

[3]     Attached to the report was the probation report in the 1991 rape case that included a summary of defendant's statement to the probation department regarding the crime to which he pled guilty. In this statement, defendant admitted to having sex with a minor, but denied a forcible rape occurred, denied having a gun with him that night, claimed he believed the victim was 18 years old, and further claimed he believed he was pleading guilty to unlawful sexual intercourse (§ 261.5) rather than forcible rape.

like I have come a long way and I would like to share my experiences with other young men that come from challenged backgrounds. I would like to get my C-10 license and open up my own electrical business and training program. I have applied myself and studied hard to become a licensed journeyman electrician and I think I could help other young guys learn a skill they could be proud of and keep them off the streets.'"

The report concluded: "The Petitioner seeks relief from a very serious crime that involved violence against women. His next felony involved the use of a handgun. He has served 17 years in state prison since 1991 and most tellingly, when asked to provide a statement about his 1991 rape conviction, he minimizes and blames a false plea on his defense attorney. The People cannot support this Petition under these circumstances. The Petitioner needs to take responsibility for his actions, and more time needs to pass to be certain that he has truly turned his life around."

Also in June 2014, one week after the prosecution's report was filed, the trial court issued a tentative ruling. After setting forth the standard for granting defendant's petition, the tentative ruling concluded: "Petitioner has failed to meet his burden of proof. Simply put, his denial of culpability in the face of a submission that reflected then-contemporaneous acknowledgment of wrongdoing reflects poorly and little circumspection by the petitioner. Indeed, he now appears to submit that his 1991 commitment offense is the result of persuasion from his unnamed defense counsel. Moreover, no relevant submission includes the gravity of a declaration of perjury but also any evident awareness from the scrivener of petitioner's commitment offenses. Mindful that the standards for determining whether rehabilitation has occurred are high, petitioner's submission on the merits is lacking. Accordingly, it is not established that he has satisfied the conditions for rehabilitation under . . . Sections 4852.01 and 4852.05 and, therefore, his petition must be denied *on the merits*." (Fns. omitted.)

6

Hearing on defendant's petition for certificate of rehabilitation was held the same day the tentative ruling issued. As previously mentioned, while the record reveals defendant was represented by the public defender about one week prior to the hearing date, i.e., when the hearing was continued, the record does not reveal whether he was still so represented when he arrived at the courthouse for the hearing, was handed the tentative ruling by one of the bailiffs, and then left the courthouse without participating in the hearing. The trial court denied the petition, stating: "I will adopt the tentatives on this there being no appearance."

## DISCUSSION

## I

### *Statutory Overview*

California law provides convicted felons with two statutory procedures for requesting a Governor's pardon: (1) section 4800 et seq. authorizes the submission of pardon applications directly to the Governor; and (2) section 4852.01 et seq. authorizes the filing of a petition for certificate of rehabilitation in the trial court, which, if granted, becomes both an automatic application for a full pardon and a judicial recommendation that such pardon be granted by the Governor. (*People v. Ansell* (2001) 25 Cal.4th 868, 873-876 (*Ansell*).) This case involves the latter procedure.

In *Ansell*, *supra*, 25 Cal.4th 868, our Supreme Court provided the following explication of the statutory scheme:

"[T]he certificate of rehabilitation procedure is available to convicted felons who have successfully completed their sentences, and who have undergone an additional and sustained 'period of rehabilitation' in California. (§ 4852.03, subd. (a) [imposing general minimum requirement of five years' residence in this state, plus an additional period typically ranging between two and five years depending upon the conviction]; see §§ 4852.01, subds. (a)-(c), 4852.06.) During the period of rehabilitation, the person must

7

display good moral character, and must behave in an honest, industrious, and law-abiding manner. (§ 4852.05; see § 4852.06.) Several provisions make clear that a person is 'ineligible to . . . petition for a certificate of rehabilitation' (§ 4852.03, subd. (b)), and that no such petition 'shall be filed' (§ 4852.06), unless and until the foregoing requirements are met. (See § 4852.01, subds. (a)-(c) [describing who 'may file' a petition].)

"Proceedings begin when a qualified person petitions for a certificate of rehabilitation in the superior court of the county in which he [or she] lives. (§ 4852.06; see § 4852.07 [requiring notice to the Governor and to the district attorney in the county or counties where the petition is filed and the petitioner was convicted].) Other provisions allow the petitioner to pursue a certificate of rehabilitation without personal expense and with professional assistance. (§§ 4852.04 [establishing a right to counsel and to assistance from rehabilitative agencies, including probation and parole officers], 4852.08 [authorizing representation by the public defender or other appointed counsel], 4852.09 [prohibiting court fees of any kind], 4852.1 [authorizing the production of official records at no charge], 4852.18 [making the petition and other necessary forms available at no charge].)

"The superior court holds a hearing and considers testimonial and documentary evidence bearing on the petition. (§§ 4852.1, 4852.11.) To this end, the court may compel the production of judicial, correctional, and law enforcement records concerning the crimes of which petitioner was convicted, his [or her] performance in custody and on supervised release, and his [or her] conduct during the period of rehabilitation, including all violations of the law known to any peace officer. (*Ibid.*) The district attorney may be directed to investigate and report on relevant matters. (§ 4852.12.)

"To enter an order known as a certificate of rehabilitation, the superior court must find that the petitioner is both rehabilitated and fit to exercise the rights and privileges lost by reason of his [or her] conviction. (§ 4852.13, subd. (a).) The issuing court

transmits certified copies of the certificate of rehabilitation to the Governor, the Board of Prison Terms, the Department of Justice, and—in the case of persons twice convicted of a felony—the Supreme Court. (§ 4852.14.)

"A certificate of rehabilitation issued and transmitted in the foregoing manner serves two functions under the language of the statutory scheme. First, it has the effect of 'recommending that the Governor grant a full pardon to the petitioner.' (§ 4852.13(a).) Second, the certificate of rehabilitation constitutes 'an application for a full pardon upon receipt of which the Governor may, without any further investigation, issue a pardon to the person named therein, except that, pursuant to Section 8 of Article V of the Constitution, the Governor shall not grant a pardon to any person twice convicted of a felony, except upon the written recommendation of a majority of the judges of the Supreme Court.' (§ 4852.16.)" (*Ansell*, *supra*, 25 Cal.4th at pp. 875-876, fn. omitted.)

We also note that "[t]he standards for determining whether rehabilitation has occurred are high. (§§ 4852.05, 4852.13(a); see §§ 4852.11, 4852.13(b).)" (*Ansell*, *supra*, 25 Cal.4th at p. 887.) "The hurdles erected by the Legislature to obtain a certificate of rehabilitation are not intended to be easily surmounted. The trial courts are entrusted with the responsibility, in the exercise of sound discretion, to ensure that the strict statutory standards for rehabilitation are maintained." (*People v. Blocker* (2010) 190 Cal.App.4th 438, 445 (*Blocker*).)

## II

### *Due Process*

Defendant contends the trial court abused its discretion and violated his constitutional right to due process by denying the petition in his absence, after the bailiff told him the petition had already been denied, handed him the court's tentative ruling, and sent him home. The record does not support this contention.

We begin by noting a pardon "'is an act of grace'"; it is "an act of individual clemency, in the gift of the Governor, to which no person has an entitlement." (*Blocker*, *supra*, 190 Cal.App.4th at p. 443, quoting *United States v. Wilson* (1833) 32 U.S. 150, 160 [8 L.Ed. 640].) Similarly, "there is no circumstance under which the statutory scheme requires or guarantees issuance of a certificate of rehabilitation by the superior court" (*Ansell*, *supra*, 25 Cal.4th at pp. 887-888), which essentially amounts to "a personal representation to the Governor that [the petitioner is] worthy of a pardon." (*Blocker*, *supra*, 190 Cal.App.4th at p. 445.) We also note there are no penal consequences attendant to a trial court's decision to deny a petition for rehabilitation. (See, e.g., *Ansell*, *supra*, 25 Cal.4th at p. 885 [change in law that denied certain sex offenders the benefit of petition for certificate of rehabilitation procedure not punitive for ex post facto purposes]; *id.* at p. 888 ["postsentence consequences of a felony conviction that might be ameliorated or removed by a certificate of rehabilitation or an ensuing pardon . . . . [¶] . . . are 'civil' notwithstanding the use of criminal sanctions to ensure their enforcement"].) Thus, the hearing contemplated by the statutory scheme is civil, rather than criminal, in nature.

"Although 'due process' encompasses a broad range of safeguards, in essence the concept guarantees a fundamentally fair decision-making process." (*People v. Ramos* (1984) 37 Cal.3d 136, 153.) In civil matters, it requires notice and an opportunity to be heard. (*Menefee & Son v. Department of Food & Agriculture* (1988) 199 Cal.App.3d 774, 781; *Kash Enterprises, Inc. v. Los Angeles* (1977) 19 Cal.3d 294, 307.) Defendant was afforded both. There can be no doubt he received notice of the hearing since *it was his hearing*, he set the original hearing date, he was present when it was continued to a different date, and he actually showed up at the time and place set for the hearing. Defendant also had an opportunity to be heard. Had he waited for the hearing to be called, he could have fully participated therein.

10

Nevertheless, defendant argues he was deprived of the opportunity to be heard because the bailiff "sent him home." However, there is no evidence in the record indicating this occurred. Something caused him to leave the courthouse prior to the hearing on his petition. There is also evidence he left after being handed the court's tentative ruling. However, we cannot presume, in the absence of any evidence, the bailiff misled defendant into believing the tentative ruling was a final decision and told him to leave the courthouse. It is at least as likely defendant read the tentative ruling, became discouraged as to his prospects for success on the petition, and left of his own accord. We simply do not know what occurred. Nor has defendant provided us with any authority holding the constitutional right of due process requires actual participation in the hearing before the petition may be ruled upon. Indeed, absent evidence defendant was prevented from attending, we conclude his failure to appear is analogous to the situation in which a civil defendant "who has received the requisite notice and defaults deliberately waives his or her constitutional right to that hearing." (*County of Mendocino v. Ted. S.* (1990) 217 Cal.App.3d 1202, 1206-1207 (*Ted S.*); *Horton v. Horton* (1941) 18 Cal.2d 579, 585.)

Based on the lack of evidence in the record, we cannot conclude defendant was deprived of the hearing contemplated by section 4852.01 et seq. in violation of his right to due process.

## III

### *Right to Counsel*

As previously mentioned, we directed the parties to submit supplemental briefing on the question of whether defendant was deprived of the right to counsel in light of the fact it did not appear from the record of the hearing that defendant was represented by counsel at that time.

11

Section 4852.04 provides in relevant part: "Each person who may initiate the proceedings provided for in this chapter *shall be entitled to receive counsel . . . .*" (Italics added.) Section 4852.08 provides in relevant part: "During the proceedings upon the petition, the petitioner may be represented by counsel of his [or her] own selection; *if he* [or she] *has no such counsel he* [or she] *shall be represented by the public defender . . . .*" (Italics added.)

After we issued our request for supplemental briefing, the record was augmented to include the reporter's transcripts from two prior court dates. On each date, the trial court continued the hearing on defendant's petition. On the second date, about one week prior to the hearing date, the transcript reveals defendant was represented by the public defender.[4] Thus, it appears the terms of sections 4852.04 and 4852.08 have been satisfied, i.e., defendant "receive[d] counsel" and, having not retained "counsel of his own selection," was "represented by the public defender," at least prior to the hearing date. The question we must answer is whether or not the trial court had a duty, when neither defendant nor the public defender appeared at the hearing, to defer ruling on the petition until either both were present or defendant entered an on-the-record waiver of the right to counsel. We conclude the trial court had no such duty.

While we have found no cases directly on point, we find *Ted. S.*, *supra*, 217 Cal.App.3d 1202 to be instructive. That case involved a default judgment entered in a paternity case. While factually different, like certificate of rehabilitation proceedings,

---

[4]    In the augmented reporter's transcript for the June 12, 2014 hearing, the cover page lists Steve Nelson as defendant's public defender. Then, the transcript states: "The Defendant was present and represented by Steve Nelson, Assistant Public Defender." When Judge Ransom stated he was "just subbing" and wanted the parties to "come back on the 18th," the record indicates defendant responded: "18th. You got it." Then Nelson asked: "Is that at 1:30?" Judge Ransom answered: "Yes. Or do you want to come in the morning?" Defendant responded: "1:30 is fine." Judge Ransom stated: "That's the order."

paternity proceedings are civil in nature and include a right to counsel. (See *Salas v. Cortez* (1979) 24 Cal.3d 22, 31.) In *Ted S.*, our colleagues at the First Appellate District held that where a defendant in a paternity proceeding has been given proper notice of the action and the right to counsel, and thereafter permits entry of default, such a defendant "deliberately waive[s] not only the right to a hearing, but also the right to appointed counsel." (*Ted S.*, *supra*, 217 Cal.App.3d at p. 1207.) The court explained: "As the basis for the default judgment procedure is the absence of a response from the defendant, it would be inconsistent with the nature of that procedure to hold otherwise and require an on-the-record waiver of the right to counsel before permitting entry of default." (*Ibid*.) This was so despite the fact "that an adjudication of paternity may have a profound effect on a person's life [citation], and that the law favors, whenever possible, a hearing on the merits rather than a default judgment." (*Ibid*.)

Here, rather than a default entered against a defendant with a right to counsel, we have a petitioner with a statutory right to counsel whose petition for certificate of rehabilitation was denied after he apparently abandoned the petition the day of the hearing. However, in both situations, the party with the right to counsel waived his right to the hearing contemplated by the respective statutory schemes, and in so doing, also waived his right to counsel at that hearing. While we do not have a default judgment, the basis of which is the absence of a response, we conclude it would be inconsistent with the certificate of rehabilitation procedure to require the trial court to defer ruling on the petition until the petitioner could be brought into court and waive the right to counsel on the record. As we have explained, the certificate of rehabilitation statutory scheme erects high hurdles for the petitioner to surmount. (*Ansell*, *supra*, 25 Cal.4th at p. 887; *Blocker*, *supra*, 190 Cal.App.4th at p. 445.) And while the statutory scheme provides such a petitioner with the right to counsel to assist in overcoming these hurdles, if he or she has been given notice of the right to counsel and does not attend the hearing on his or her

13

own petition, the trial court may conclude the petitioner has waived both the right to be heard and the right to counsel, and may proceed to rule on the petition in the petitioner's absence.

Finally, our conclusion is bolstered by our Supreme Court's observation that "there is no circumstance under which the statutory scheme requires or guarantees issuance of a certificate of rehabilitation by the superior court." (*Ansell*, *supra*, 25 Cal.4th at pp. 887-888.) While issuance of the certificate may have a profound effect on the petitioner's life, assuming the Governor acts favorably on the trial court's pardon recommendation, the petitioner is *entitled* to neither the certificate nor the pardon. And denial of the certificate has no effect on the petitioner at all, since all civil restraints have already been imposed by virtue of the outcome of the criminal proceedings that rendered him or her a convicted felon. Thus, unlike the paternity situation, where an adjudication of paternity has an undeniable effect on the defaulting defendant's life, here, the denial of a certificate of rehabilitation has no such effect. If an on-the-record waiver of the right to counsel is not required in the former context, we perceive no reason to require one in the latter.

In sum, defendant was not only apprised of his right to counsel under the certificate of rehabilitation provisions, he was represented by the public defender one week before the hearing date, when the matter was continued. The record does not reveal what happened in the interim. However, defendant appears to have arrived at the courthouse without counsel on the date of the hearing, received the court's adverse tentative decision, and left without participating therein. Absent evidence in the record to the contrary, we must conclude defendant waived not only his right to the hearing, but also the right to counsel. Nor was the trial court required to obtain an on-the-record waiver of that right before denying his petition for certificate of rehabilitation.

14

DISPOSITION

The judgment (order denying defendant's petition for certificate of rehabilitation) is affirmed.

                                                               _____HOCH_____, J.

We concur:

_____NICHOLSON\_\_\_\_\_, Acting P. J.

_____BUTZ_____, J.