Filed 10/9/14  Burnell v. Marin Humane Society CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JILL BURNELL,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MARIN HUMANE SOCIETY,<br><br>        Defendant and Appellant. | A140246, A140247<br><br>(Marin County<br>Super. Ct. Nos. CIV 1300669,<br>CIV 1300875 |

The Marin Humane Society (MHS), as the designated animal services agency for Marin County, took possession of three horses from Jill Burnell's property, believing seizure was required to protect the animals' health and safety.  After a hearing officer chosen by MHS reviewed and upheld the seizures, Burnell filed two petitions for writs of mandamus seeking to overturn the hearing officer's decisions.  The trial court granted the petitions in part on the grounds that Burnell was denied a fair hearing by an impartial hearing officer.  The trial court went on to find the evidence presented to the hearing officer failed to support the hearing officer's findings, and ruled the seizures were unjustified.  We hold the trial court was required to remand the matters back to MHS for a new hearing and erred in proceeding to reweigh the evidence in the administrative record on the merits.

## I.  BACKGROUND

### A.  *The Seizures*

MHS is a private nonprofit organization that has been designated as the animal services agency and provider of animal control services for Marin County.  It is charged

with enforcing animal cruelty laws in Marin County, including state laws relating to the "care, treatment and impounding of animals." (Marin Muni. Code, §§ 8.04.110, 8.04.120, subds. (a)–(c).) California Penal Code[1] section 597.1 requires MHS "immediately [to] seize [an] animal" when it "has reasonable grounds to believe that very prompt action is required to protect the health or safety of the animal." (§ 597.1, subd. (a)(1).)

Burnell is an experienced owner and breeder of sport horses. In October 2012, Burnell acquired a 35-acre parcel in an unincorporated area of Marin County where she keeps horses as part of her business. Michelle Rogers, a field services sergeant with MHS, was informed by a friend of hers in October 2012 that Burnell was moving her business to Marin County. Rogers's friend had previous contact with Burnell due to complaints concerning the welfare of her animals at her previous location in Sonoma County. Rogers read numerous postings critical of Burnell's treatment of her horses on an Internet Web site. Sergeant Rogers spoke with Burnell by telephone, and on October 12, 2012, made a visit to the property accompanied by Captain Cindy Machado, MHS's director of animal services. They spoke with neighbors and took photographs of the property and horses from adjoining properties. Over the next few months, Rogers tried unsuccessfully to reach Burnell, and made additional visits to the property to observe, photograph, and document the condition of the horses.

On December 18, 2012, Rogers left a correction notice on Burnell's fence noting several horses were "thin/lame" and needed veterinary care. After receiving information a stallion known as Romantic Star had been in a fight with another stallion and both were seriously injured, Rogers visited the property with MHS Lieutenant Steve Hill and a veterinarian on December 27, 2012.

That same day, under the authority of section 597.1, subdivision (a)(1), MHS seized Romantic Star and a mare named Pookie from Burnell's property. On January 4,

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

2013, MHS seized a second mare from Burnell's property, known as Nutsie.[2]  At the time of the seizures, MHS provided Burnell with a notice of seizure of animals pursuant to section 597.1, subdivision (f)(1).  The notices stated the horses were being seized pursuant to section 597.1, based on their "physical condition" and "improper care."  The notices further advised Burnell she could request a postseizure hearing to determine the reasonableness of the seizures, as provided in section 597.1, subdivision (f).  Burnell requested such a hearing.

B. *The Postseizure Hearings*

MHS selected and paid for an outside hearing officer, Albert C. Burnham, to preside over the postseizure hearings to determine whether the seizures were justified under section 597.1.[3]  The first hearing, concerning the seizures of Pookie and Romantic Star, took place on January 8, 2013.  The hearing regarding Nutsie took place on January 24, 2013.  Burnell was present and represented by counsel at both hearings.  Sergeant Rogers, Lieutenant Hill, and Captain Machado were present for both hearings and MHS was also represented by counsel.  Rogers testified and was cross-examined at both hearings, and Machado testified at the second hearing.  Burnell presented no live testimony[4] but submitted declarations and documentary evidence to show there were no exigent circumstances requiring seizure of the three horses, and she had been unfairly maligned for mistreating the animals in her care.

---

[2] A third mare, named Blackie, was also seized on January 4, 2013, and Blackie's seizure was also litigated in the administrative and trial court proceedings.  Having settled with Blackie's owner, MHS raises no issue in this appeal concerning Blackie, and we therefore limit our discussion of the facts and our disposition of this case to Nutsie, Pookie, and Romantic Star.

[3] Under section 597.1, subdivision (f)(2), the seizing agency may either designate "its own officer or employee to conduct the hearing" or "utilize the services of a hearing officer from outside the agency."

[4] Burnell chose not to testify at either hearing.  She was under criminal investigation by MHS at the time of the hearings.  (See §§ 597, subd. (b),  597.1, subd. (a).)

3

In connection with a continuing objection to the hearing procedures, based in part on the asserted bias of the hearing officer, Burnell's counsel elicited testimony from Machado that (1) Machado had retained Burnham at least four or five times in the previous 12 months and over 20 times in the previous five years to conduct animal seizure hearings for MHS; (2) MHS paid Burnham for his services in connection with the hearings; (3) Burnham was being paid at the rate of $125 per hour for his work on the current cases; (4) Rodgers, Hill, and Machado were involved in the majority of the 20 cases heard by Burnham; and (5) Burnham had found the seizures justified in all of the MHS cases he had heard.

On January 14, 2013, the hearing officer issued an order upholding the seizures of Romantic Star and Pookie, finding the horses were in "dire condition," based on the testimony, photographs, and documentary evidence submitted by MHS. The hearing officer further found Burnell failed to prove she was able and willing to provide the necessary care for the horses, and therefore the return of the horses was barred under section 597.1, subdivision (f).[5] On January 31, the hearing officer upheld the seizure of Nutsie, finding her to be in extremely poor physical condition, and rejected Burnell's claim of bias and unfairness in the hearing process.

Following the hearing officer's rulings, MHS sent letters to Burnell—captioned "Notice of Lien for Charges for Care of Horses"—notifying her of the costs, up to and including January 31, 2013, for the seizure and care of the horses, and setting a deadline for Burnell to reimburse MHS for the costs incurred. The letter stated: "If these charges are not paid by [the deadline date of February 18, 2013] your horses may be deemed abandoned pursuant to Penal Code [section] 597.1 and become the property of [MHS]."[6]

_____

[5] Section 597.1, subdivision (f)(4) provides that an animal "shall not be returned to its owner" unless "the owner demonstrates to the satisfaction of the seizing agency or the hearing officer that the owner can and will provide the necessary care for the animal."

[6] When an animal is seized under section 597.1, the owner or keeper of the animal is "personally liable to the seizing agency for the full cost of the seizure and care of the animal." (§ 597.1, subds. (f)(4), (h).) Subdivision (h) provides: "[I]f the charges for the seizure or impoundment and any other charges permitted under this section are not paid

4

Burnell timely paid the lien charges of $4,727.10 for Romantic Star, but has not paid the charges for Pookie and Nutsie (a total of $6,088.01).

## C. *The Administrative Writ Proceedings*

On February 28, 2013, Burnell filed petitions for writs of administrative mandamus and damages challenging the hearing officer's decisions (cases Nos. CIV 1300669 & CIV 1300875, respectively).[7]

Burnell sought writs of mandate to compel (1) return of her horses, (2) vacation of all findings made by the hearing officer, (3) return of all funds received by MHS in connection with the acts referenced in the petition, and (4) payment of damages according to proof. The petitions alleged MHS did not proceed in the manner required by law, the decisions were not supported by the findings, and the findings were not supported by the admissible evidence. In particular, Burnell alleged MHS violated her due process rights by failing to provide fair hearings, or adequate notice of the hearings in compliance with section 597.1. She further alleged the hearings violated section 597.1 because they were not held before an unbiased, competent hearing officer. The petitions alleged the hearing officer was not competent to serve due to financial bias, among other reasons. With respect to her claim for damages, Burnell alleged she had suffered significant economic and reputational injury as a result of MHS's unwarranted seizures of the horses.

On July 10, 2013, MHS filed motions to augment the administrative record by the inclusion of documents showing Burnell assertedly abandoned Pookie and Nutsie by failing to pay the lien charges for them on or after February 18, 2013. MHS contended the evidence was relevant to the issue of Burnell's remedy in the event the court granted

---

within 14 days of the seizure, . . . the animal shall be deemed to have been abandoned and may be disposed of by the seizing agency."

[7] Burnell's original petition in case No. CIV 1300669 was filed on February 13, 2013. She filed an amended petition on February 28.

the petitions.[8]  The trial court denied the motion.  It further found there was no abandonment of Pookie or Nutsie because despite the nonpayment of the lien charges for these horses Burnell was at all times trying to get them back.

The trial court adopted its original tentative rulings in the two cases, granted Burnell's petitions, vacated the hearing officer's decisions, and directed MHS to return Nutsie, Pookie, and Romantic Star to Burnell.  It determined that all costs incurred by MHS for the seizure, care, and treatment of the horses was to be borne by MHS.  The court found in the case of Nutsie (1) the notice of seizure failed to comply with statute or due process by providing adequate notice of the reasons for the seizure; (2) Burnell was denied a fair hearing due to the hearing officer's financial conflict of interest under *Haas v. County of San Bernardino* (2002) 27 Cal.4th 1017 (*Haas*); and (3) under the independent judgment standard of review, the evidence failed to show the seizure of Nutsie was justified by exigent circumstances.  In the case of Romantic Star and Pookie, the court found (1) Burnell was denied a fair hearing due to deficiencies in the notices of seizure and the hearing officer's failure to permit voir dire on his method of appointment and possible bias; and (2) under the independent judgment standard of review, the evidence failed to show the seizure of the horses was justified by exigent circumstances.

MHS timely appealed from the orders granting Burnell's petitions for writ of mandate (appeals Nos. A140246 and A140247).  We consolidated the appeals for oral argument and disposition.

## II.  DISCUSSION

MHS contends Burnell lacked standing to seek a writ of mandate with respect to two of the three horses, and the trial court erred in (1) not remanding the cases back for new administrative hearings, and (2) finding the hearing officer's findings were not supported by the evidence.

---

[8] The trial court had announced a tentative decision to grant the petitions approximately three weeks before the motions to augment were filed, but elected after hearing oral argument to continue the hearing and order additional briefing.

**A.** *Standing*

MHS maintains Burnell lacked standing to challenge the hearing officer's decisions with respect to Pookie and Nutsie because she failed to timely pay the lien charges for their seizure and care incurred by MHS through January 31, 2013. Although the standing issue was not raised in the trial court, lack of standing is a jurisdictional matter that may be raised at any time in the proceeding, including at trial or in an appeal. (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 361; *Blumhorst v. Jewish Family Services of Los Angeles* (2005) 126 Cal.App.4th 993, 1000.)

According to MHS, section 597.1, subdivision (h) explicitly provides an owner's failure to timely pay the lien costs results in abandonment of the seized animal and transfers ownership of the animal to MHS as a matter of law. Subdivision (h) provides in pertinent part as follows: "If any animal is properly seized under this section . . . , the owner or keeper shall be personally liable to the seizing agency for the full cost of the seizure and care of the animal. Further, if the charges for the seizure or impoundment and any other charges permitted under this section are not paid within 14 days of the seizure, or if the owner, within 14 days of notice of availability of the animal to be returned, fails to pay charges permitted under this section and take possession of the animal, the animal shall be deemed to have been abandoned and may be disposed of by the seizing agency."[9]

In *Broden v. Marin Humane Society* (1999) 70 Cal.App.4th 1212 (*Broden*), the Court of Appeal held that the owner of an exotic reptile shop could not recover damages from MHS due to the loss of 30 snakes and lizards that had been " 'adopted out' " or " 'euthanized' " by MHS after seizing them from the shop under section 597.1. (*Broden*, at pp. 1218, 1223–1226.) The owner had unsuccessfully contested the seizures at an administrative hearing and then failed to pay the ensuing lien charges for the seized

---

[9] Notwithstanding the 14-day period specified in the statute, MHS agreed to give Burnell until February 18, 2013 (more than 50 days from the seizure) to pay the required fees for Romantic Star and Pookie. The fees for Nutsie were also due on that day.

animals or request a stay of the hearing officer's decision at the commencement of his ensuing administrative mandamus proceeding. (*Id.* at pp. 1217, 1225–1226; see Code Civ. Proc., § 1094.5, subd. (g).) *Broden* found the animals were required by section 597.1, subdivision (h) to be deemed abandoned, and nothing in the statute provided for payment of the lien charges to be deferred until the owner was restored to possession of the animals or his dispute over the propriety of the seizure was resolved by a final judgment. (*Broden,* at pp. 1223–1225.) The court held that having failed to pay the lien, the shop owner no longer had any possessory or ownership interest in the animals that could have supported an award of damages. (*Id.* at p. 1226; see also *Jackson v. Silicon Valley Animal Control Authority* (N.D.Cal. Oct. 2, 2008, No. C 07-5667 RS) 2008 U.S. Lexis 76837, *13–*14 (*Jackson*) [following *Broden* in denying state law damages and conversion claims based on loss of dogs and cats seized from the owners under § 597.1].)

We reject MHS's standing claim in this case. Section 597.1 nowhere states that failing to pay the lien charges automatically terminates the owner's or keeper's standing to further challenge the seizure of her animals. The Court of Appeal in *Broden* did not consider or decide whether the shop owner had standing to seek judicial review of the seizure of his animals. A rule denying such standing would make no sense. The effect of the hearing officer's decisions in this case was that Burnell lost the economic value of three horses, became personally liable to MHS for the cost of their seizure and care in the combined amount of $10,815.11,[10] and suffered at least some reputational harm. We decline to hold Burnell's failure to pay the lien amounts up front deprived her of standing to seek judicial redress for these detriments even if she could show the seizures were unlawful and the administrative decisions upholding them improper.

---

[10] Under section 597.1, subdivision (f)(4), the owner or keeper of the animal is "personally liable to the seizing agency for the full cost of seizure and care of the animal."

Whether Burnell's allowable remedies included the return of the seized horses is a distinct question to be addressed *post*.[11]  We hold she did have legal standing to obtain administrative mandamus review, including a determination she had no personal liability to MHS for the cost of seizure and care of the horses, as well as damages for wrongful seizure as pleaded in her petitions.[12]

## B. *Remand*

MHS contends in the alternative that having found the administrative hearing unfair the trial court erred by not remanding both cases to MHS for a new hearing instead of proceeding to reweigh the evidence presented at the administrative hearing.  It relies on well-established case law that a remand to the administrative agency is the proper remedy for an unfair administrative hearing.  MHS does not in fact challenge the trial court's findings the hearings in this case were unfair nor its finding in the case of Nutsie's hearing, that Burnell's due process rights were violated under *Haas* due to the hearing officer's financial conflict of interest.  We accept MHS's tacit concessions of these points and agree a remand to the agency is the appropriate remedy for a defective hearing process.  For the reasons discussed below, we reject MHS's position at oral argument that the remand be limited in this case to Romantic Star.

---

[11] The question pertains to Nutsie only.  Pookie died while this appeal was pending, mooting the issue of whether Burnell is entitled to her return.  There is no abandonment issue with respect to Romantic Star since Burnell timely paid the lien fees due for Romantic Star in February 2013.

[12] The issue of what, if any, damages Burnell would be entitled to recover if the seizures of Pookie and Nutsie were wrongful is not before us.  *Sandrini Brothers v. Voss* (1992) 7 Cal.App.4th 1398 (*Sandrini Brothers*) holds a statutory property seizure violates due process unless a remedy exists in state law by which one who has suffered damage as the result of a wrongful seizure may recover compensation. We decline to hold this due process right is extinguished by nonpayment of lien fees before the seizure's legitimacy can be judicially reviewed, and do not read either *Broden* or *Jackson* as holding to the contrary.  We note the question of damages is distinct from return of the animal which is foreclosed by section 597.1, subdivision (h) if the lien fees are not timely paid.  Further, the issue of damages is not germane in the administrative hearing process.  (See § 597.1, subds. (f), (g), (j).)

The issue presented in *Haas* was "whether a temporary administrative hearing officer has a pecuniary interest requiring disqualification when the government unilaterally selects and pays the officer on an ad hoc basis and the officer's income from future adjudicative work depends entirely on the government's goodwill." (*Haas, supra*, 27 Cal.4th at p. 1024.) The Supreme Court found that the hearing officer did have a disqualifying pecuniary interest in that circumstance because "a prosecuting agency . . . must . . . be presumed to favor its own rational self-interest by preferring those who tend to issue favorable rulings," and "adjudicators selected and paid in this manner . . . have a 'possible temptation . . . not to hold the balance nice, clear and true.'" (*Id.* at p. 1029, quoting *Tumey v. Ohio* (1927) 273 U.S. 510, 532.) The latter temptation arises from "the prospect of future employment," the court found, and gives the hearing officer "an impermissible financial interest in the outcome of the litigation" that violates the private party's constitutional right to due process.[13] (*Haas,* at pp. 1030–1031.) Given *Haas*'s relevance to the present case, which is uncontested by MHS, we concur in the trial court's findings that Burnell was denied a fair administrative hearing in both of the proceedings in issue.

The proper remedy for the denial of a fair hearing is to remand the matter for a new administrative hearing before a different, qualified hearing officer. (See Code Civ. Proc., § 1094.5, subd. (f); *Fascination, Inc. v. Hoover* (1952) 39 Cal.2d 260, 268 ["it is settled that where determinative powers are vested in a local administrative agency and the court finds . . . a hearing was denied or it was otherwise erroneous, it is proper procedure to remand the matter to the agency for further and proper proceedings rather than for the court to decide the matter on the merits"]; *Kumar v. National Medical Enterprises, Inc.* (1990) 218 Cal.App.3d 1050, 1056 ["the setting aside of a final

---

[13] The following comment by the *Haas* court applies with at least equal force here: "These constitutional principles address the risks inherent in certain systems for selecting adjudicators rather than the ethical behavior of specific participants in those systems. . . . We have no reason to believe that anyone involved in this proceeding acted unethically." (*Haas, supra*, 27 Cal.4th at p. 1031, fn. 19.)

10

administrative decision because of unfair hearing practices requires a remand for further proceedings"]; *Sinaiko v. Superior Court* (2004) 122 Cal.App.4th 1133, 1145 ["where the administrative agency fails to provide a fair hearing . . . the court should remand to the administrative agency to consider the evidence and to exercise its discretion following a full and fair hearing on the merits"]; *Usher v. County of Monterey* (1998) 65 Cal.App.4th 210, 220 [remand required because "the [administrative] proceeding . . . had not been heard by a properly qualified person, [and] the result is that the issues had not been determined first or at all by the administrative agency"].)

We do not limit our remand order to Romantic Star. Burnell is still entitled to show the original seizures of Pookie and Nutsie were wrongful. First, under the first sentence of section 597.1, subdivision (h), "If [the horses were] properly seized," Burnell was "personally liable to the seizing agency for the cost of [their] seizure and care . . . ," at least until the point when the horses were abandoned by nonpayment of the lien fees. The question of whether Pookie and Nutsie were "properly seized" remains unresolved. Burnell is entitled to an adjudication of that issue in order to determine whether she has personal liability to MHS.[14] Second, if Burnell is able to show the horses were improperly taken at a new postseizure hearing, she may have remedies or claims outside of section 597.1, with respect to these animals. (See *Sandrini Brothers*, *supra*, 7 Cal.App.4th at pp. 1405–1408.)

### C. *Other Issues*

For the parties' guidance in future proceedings we address three further issues that may arise on remand after a qualified hearing officer has determined whether the original seizures were improper: (1) whether the remedy of having Nutsie returned to Burnell is precluded by Burnell's failure to timely pay the lien fees of $3,543.75, assessed for her seizure and care; (2) the parties' rights and remedies under section 597.1, depending on

---

[14] Section 597.1, subdivision (f)(3) provides that the failure of an owner or keeper to request or attend a hearing "shall result in a forfeiture of . . . any right to challenge his or her liability for costs incurred."

the outcome of the administrative proceedings; and (3) whether the record supports the trial court's finding the seizures involved a fundamental vested right.

### 1. *Return of Nutsie*

Regarding the first issue, we agree with *Broden*'s interpretation of section 597.1, subdivision (h). Unless the owner timely pays the lien charges assessed after seizure has been upheld by the hearing officer, or obtains a judicial stay of the hearing officer's decision, the seized animal is deemed abandoned and the owner can no longer recover possession of the animal. (*Broden, supra*, 70 Cal.App.4th at pp. 1223–1226.) The statute provides the seized animal "*shall* be deemed to have been abandoned" if the owner or keeper of the animal fails to timely pay the charges assessed for the cost of the seizure and care of the animal. (§ 597.1, subd. (h), italics added.) "The language of subdivision (h) and other provisions of section 597.1 are clear and without ambiguity. Its plain language is therefore to be applied." (*Broden,* at p. 1225.) Subdivision (i) of section 597.1 further underlines the Legislature's intent. It provides, "If the animal requires veterinary care and the humane society . . . is not assured, within 14 days of the seizure of the animal, that the owner will provide the necessary care, *the animal shall not be returned to its owner* and *shall be deemed to have been abandoned* and may be disposed of by the seizing agency." (§ 597.1, subd. (i), italics added.)

The charges for Nutsie included over $3,000 in fees for veterinary care. We believe the statute unambiguously required Burnell to pay the charges assessed in February 2013, for the seizure and care of Nutsie through January 31, 2013 (absent a stay of the hearing officer's decision) or be deemed to have abandoned the horse. We therefore hold Burnell would not be entitled to the return of Nutsie should the hearing officer find Nutsie's seizure was unjustified.

### 2. *Other Rights and Liabilities*

Assuming the hearing officer found Nutsie's seizure improper, Burnell would be relieved of her ongoing liability for the still unpaid charges assessed in February 2013. In addition, regardless of the outcome of a new administrative hearing on the propriety of Nutsie's (and Pookie's) seizure, Burnell is not liable for any costs incurred by MHS in

12

regard to Nutsie (or Pookie) *after* February 18, 2013—the date these horses were deemed abandoned due to Burnell's nonpayment of the lien charges (and failure to have the charges stayed by the trial court). With regard to Romantic Star, if the hearing officer finds Romantic Star's seizure was improper, Burnell is entitled to return of the stallion and MHS would be liable to Burnell for repayment of the lien fees paid on February 18, 2013, plus interest from that date to the date of repayment. MHS concedes the latter liability would apply if Romantic Star's seizure was improper. If Romantic Star's seizure is upheld, section 597.1, subdivision (f)(4)[15] governs Burnell's and MHS's rights and obligations upon such a finding.

We express no opinion regarding any other legal remedy or claim available to Burnell, or any legal defenses available to MHS, should she prevail on remand in the administrative hearing or in any ensuing mandamus action.

### 3. *Fundamental Vested Right*

We do not find sufficient evidence in the record to support the trial court's finding that the seizure proceedings substantially affected a fundamental vested right of Burnell's and were therefore subject to review under the independent judgment test. (See *Bixby v. Pierno* (1971) 4 Cal.3d 130, 143–144.) The independent judgment test applies only when the right affected is deemed so important that independent *judicial* review of the evidence is required. (*Amerco Real Estate Co. v. City of West Sacramento* (2014) 224 Cal.App.4th 778, 783.) Although that is a case-by-case determination, we note other animal seizure cases have applied the substantial evidence test, not independent review. (See *Broden*, *supra*, 70 Cal.App.4th at p. 1222; *Zuniga v. County of San Mateo Dept. of Health Services* (1990) 218 Cal.App.3d 1521, 1530.) The trial court explained in this case the

---

[15] Section 597.1, subdivision (f)(4) provides in relevant part: "If it is determined the seizure was justified, the owner or keeper shall be personally liable to the seizing agency for the full cost of the seizure and care of the animal. The charges for the seizure and care of the animal shall be a lien on the animal. The animal shall not be returned to its owner until the charges are paid and the owner demonstrates to the satisfaction of the seizing agency or the hearing officer that the owner can and will provide the necessary care for the animal."

seizures affected a fundamental vested right because they "involve[d] the deprivation of valuable property," but we find no evidence of the horses' value in the record.[16] Moreover, there was no showing the seizures " 'would destroy or even significantly injure' " Burnell's business. (*Amerco*, at p. 784.) Even if the seizures resulted in a loss of breeding income, a reduction in income or profitability in itself does not substantially affect a fundamental vested right. (*Standard Oil Co. v. Feldstein* (1980) 105 Cal.App.3d 590, 604–605 [agency decision to close one of four units at oil refinery did not affect a fundamental vested right].) While we do not prejudge whether Burnell could show the seizures substantially affected a fundamental vested right on a proper record, the current record fails to support that determination.

It is unnecessary to decide the further issues raised by MHS concerning the trial court's reweighing of the evidence presented to the hearing officer.[17]

## III. DISPOSITION

The order granting Burnell's petition for writ of mandamus in case No. CIV 1300669 is reversed, and the same order in case No. CIV 1300875 is reversed as to Nutsie. The matters are remanded to the trial court with directions to enter modified orders in both proceedings remanding the cases to MHS for new administrative hearings before a different, qualified hearing officer to make the determinations required by section 597.1, subdivision (f)(4) and, if applicable, subdivision (j).

Each side shall bear its own costs on appeal.

---

[16] The record shows at least two of the four horses, Romantic Star and Blackie, were not in fact owned by Burnell.

[17] MHS's requests for judicial notice and motions to take additional evidence in cases Nos. A140246 and A140247 are denied.

_____

Margulies, Acting P.J.

We concur:


_____

Dondero, J.


_____

Banke, J.

15